UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:25-cr-00346-KAM |
| Plaintiff, | |
| v. | |
| LUIS LEANDRO ORTIZ RIBERA, | DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR BILL OF PARTICULARS |
| Defendant. | |

-------------------------------------------------------- X

Defendant Luis Leandro Ortiz Ribera ("Mr. Ortiz") submits this memorandum of law in support of his Motion for Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f).

## I.   INTRODUCTION

The Government has charged Mr. Ortiz and his co-defendant Emmanuel Clase De La Cruz ("Mr. Clase"), both Major League Baseball ("MLB") players and pitchers for the Cleveland Guardians, with wire fraud conspiracy, honest services wire fraud conspiracy, conspiracy to influence sporting contests by bribery, and money laundering conspiracy. ECF No. 1, ¶ 41-48. The four-count Indictment in this bribery and conspiracy case hinges on the veracity of the Government's allegations that Mr. Ortiz—in the final month of the multi-year conspiracy—learned of and agreed to "join[] [Mr. Clase and] the criminal scheme" to defraud online sportsbooks, deprive the MLB of his honest services, and enrich himself and numerous "co-conspirators" whom he had never met. ECF No. 1, ¶ 1, 30.

For his part, the Government alleges Mr. Ortiz agreed to throw one specific pitch in two MLB games prior to each game in exchange for money. Despite the centrality of these alleged agreements to each charge, the Indictment provides virtually no information about basic facts

1

underlying the serious crimes alleged against him, including when he "joined" this scheme, how and with whom he agreed to participate in the scheme, and how he benefited from his participation. As written, the Indictment lacks sufficient factual detail to inform Mr. Ortiz of the charges against him and therefore deprives him of a reasonable opportunity to prepare his defense.

Despite the obvious complexity of this alleged criminal scheme, the Indictment lacks necessary details, especially with respect to Mr. Ortiz. The conspiracy allegedly occurred between May 2023 and June 2025. ECF No. 1, ¶ 13. During that two-year period, the Government alleged bettors won at least $400,000 from gambling on several pitches thrown by Mr. Clase. ECF No. 1, ¶ 29. Mr. Ortiz allegedly joined the conspiracy in June 2025 and earned bettors $60,000 by agreeing to throw two total pitches in two MLB games ("Subject Pitch-1" and "Subject Pitch-2"). ECF No. 1, ¶¶ 30, 40. Even when the Indictment references a specific date, like "before the June 15 Game" and "before the June 27 Game," it lacks any reasonable specificity as to the facts underlying the allegation. ECF No. 1, ¶¶ 31, 37. This Court has the authority to remedy those shortcomings and should use its discretion to order the Government to produce a bill of particulars.

The Government's failure to allege specifically when and how Mr. Ortiz "joined" the conspiracy, when and how he agreed to throw specific pitches, and which communications relate to payments leaves the defense guessing and in danger of surprise at trial. Given the prejudice to Mr. Ortiz's defense caused by the vagueness of the Government's allegations, a bill of particulars is essential to enable Mr. Ortiz to prepare his defense. This Court should order the Government to identify with sufficient particularity the nature of the charges pending against Mr. Ortiz, as set forth herein, thereby enabling him to prepare his defense, preventing surprise at trial, and interposing a plea of double jeopardy.

## II.     LAW AND ARGUMENT

*First*, the Indictment does not describe the nature of any agreement or when or how Mr. Ortiz allegedly entered or "joined" into the conspiracy. While overt acts need not be alleged in the Indictment, Mr. Otiz cannot reasonably defend himself against the Government's conspiracy charges without knowing the basic facts that undergird it. *See United States v. Rajaratnam*, No. 09 CR. 1184, 2010 WL 2788168, at *3 (S.D.N.Y. July 13, 2010) (noting that courts have ordered the government to provide more particulars about overt acts alleged in terms too general to enable the defendant to defend against them) (citing *United States v. Bin Laden*, 92 F. Supp. 2d 225, 237 (S.D.N.Y. 2000)). Moreover, the Indictment does not specify all coconspirators and the dates on which each person entered or exited the conspiracy. To adequately defend against the Government's case, Mr. Ortiz must know who he is alleged to have conspired with and during what time frame he allegedly conspired with them. *See United States v. Dean*, 266 F. Supp. 159, 160 (S.D.N.Y. 1966) (granting motion for a bill of particulars requiring the government to set forth approximate dates, times, and locations of alleged criminal acts); *see also United States v. Urso*, 369 F. Supp. 2d 254, 272 (E.D.N.Y. 2005) (ordering government to submit a bill of particulars when "bare-bones" allegations in portion of the indictment will not sufficiently allow defendant to prepare for trial).

*Second*, just as the Indictment lacks information as to how Mr. Ortiz allegedly entered into the conspiracy, it contains scant information regarding when or how Mr. Ortiz agreed to throw the two subject pitches—the only overt acts identified by the Government with respect to Mr. Ortiz. The Government alleged "[b]efore the June 15 Game, [Mr. Ortiz] agreed with the defendant [Mr. Clase] that in exchange for approximately $5,000, [Mr. Ortiz] would throw a ball for his first pitch in the second inning of the June 15 Game ('Subject Pitch-1')." ECF. No. 1, ¶ 31. A single sentence

summarizes this conclusory assertion without providing an underlying factual basis. The same reasoning applies to the second pitch. Again, the Indictment's description of this conspiratorial pitch is limited to a single sentence: "Before the June 27 Game, [Mr. Ortiz] agreed with the defendant [Mr. Clase] that in exchange for approximately $7,000, [Mr. Ortiz] would throw a ball for his first pitch in the third inning of the June 27 Game ('Subject Pitch-2')." ECF. No. 1, ¶ 37. Based on this limited information involving an indefinite period of time (some time "before" the games), Mr. Ortiz cannot adequately prepare a defense, and a bill of particulars is warranted with respect to the details of these agreements.

*Third*, the Government characterizes seemingly innocent messages exchanged between Mr. Clase and Mr. Ortiz on June 16, 2025, as a discussion regarding a bribe or kickback "for throwing Subject Pitch-1." ECF No. 1, ¶ 35. The Government is aware that these individuals communicated on a regular, if not daily, basis about the Dominican Republic, horses, and other animals. Without providing a sufficient factual basis for its interpretation, the Indictment interprets these messages in a manner that favors the Government's theory of the case. A bill of particulars is necessary to clarify the Government's basis for alleging that these messages related to the charged criminal conduct.

*Fourth*, the Government fails to identify with adequate specificity any agreed-upon "materially false or fraudulent" statements or representations in furtherance of a wire fraud. ECF No. 1, ¶ 42. Thus, the Government should be required to provide the defense a written specification of each of the materially false statements that it contends were made by Mr. Ortiz for purposes of executing the allegedly fraudulent scheme.

### A.  A bill of particulars is necessary to the preparation of Mr. Ortiz's defense and to avoid prejudicial surprise at trial.

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). That requirement codifies and enforces "basic principles of fundamental fairness" inherent in the Sixth and Fifth Amendments. *Russell v. United States*, 369 U.S. 749, 763–66 (1962). To satisfy this requirement and preserve a defendant's constitutional rights, an indictment must "set forth the essential elements and facts needed to inform the defendant[] of the charges, thus enabling them to defend and to plead an acquittal or conviction in bar of any future prosecution for the same offenses." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). When an indictment does not meet this standard, federal courts may "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). Rule 7(f) provides that the accused have the right to seek "a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial [and] to prevent surprise." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam).

The purpose of a bill of particulars is threefold: to provide a defendant the necessary facts that would allow him "[1] to prepare for trial, [2] to prevent surprise, and [3] to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Bortnovsky*, 820 F.2d at 574. Mr. Ortiz "bears the burden of showing 'the information sought is necessary,' and that he will be prejudiced without it." *United States v. Shkreli*, No. 15-CR-637, 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016) (quoting *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000)). In cases involving fraud, "a bill of particulars may be appropriate where the indictment [] does not identify the specific documents and transactions the Government contends are fraudulent." *Shkreli*, 2016 WL 8711065, at *4 (denying defendant's motion for bill of

5

particulars in light of a superseding speaking indictment providing "significant detail as to the particulars of the type and extent of the alleged criminal activities."). Information that is necessary to the defense may include "specific documents and transactions the Government contends are fraudulent." *Id*. While this information may be provided by "the indictment or in some acceptable alternate form," the exchange of discovery documents alone is insufficient. *See Bortnovsky*, 820 F.2d at 575.

"Perhaps the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive *and* the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006). In *United States v. Upton*, for example, this Court granted particulars where the government failed in its discovery to "isolat[e] the documents that are relevant and may be offered at trial which would spare the defendants the task of examining all the documents." 856 F. Supp. 727, 746–47 (E.D.N.Y. 1994); *see also United States v. Nachamie,* 91 F.Supp.2d 565, 568 (S.D.N.Y. 2000) (granting particulars where "[t]he problem . . . is not a failure to produce, but a failure to designate."). Where such burdensome discovery exists, the defendant may be unfairly "buried with paper," and unable to discern from the massive discovery production what part of his conduct was allegedly unlawful. *United States v. Turkish,* 458 F. Supp. 874, 882 (S.D.N.Y. 1978).

This occurred in *Bortnovsky*. *See* 820 F.2d at 574. In *Bortnovsky*, the Court of Appeals concluded that the defense was hindered in a document intensive, fraud case by the district court's failure to compel the Government to identify crucial information, including specific dates and documents. *See* 820 F.2d at 574. Instead, the Government dumped "mountains of documents" on defense counsel without identifying which documents it alleged were fraudulent. *See id*., at 574-

6

75. The government introduced evidence relevant to twelve burglaries, alleging only four unspecified burglaries were fabricated, and thousands of documents, alleging that three unspecified documents were false. *See id.* Because the relevance of key events was "shrouded in mystery at the commencement of and throughout the trial," the defense was forced to explain irrelevant events and confront numerous documents unrelated to the charged conduct. *Id.*, at 574-75. These "furtive" tactics impermissibly shifted the burden of proof to the defendants. *See id.*, at 575. The Court of Appeals reversed the defendants' convictions, finding that "the district court erred by failing to grant a bill of particulars which was vital to [defendants'] understanding of the charges pending and to the preparation of a defense." *See id.* Like in *Bortnovsky*, the Government here has not fulfilled its obligation merely by providing sizeable discovery to the defense.

In ascertaining whether a bill of particulars is appropriate, the Court may consider not only the indictment, but also all the information which has been made available to the defendant, including any discovery. *United States v. Fischbach & Moore, Inc.*, 576 F. Supp. 1384, 1389 (W.D. Pa. 1983) (citing *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir. 1972), *cert. denied*, 409 U.S. 914 (1972)). The Government cannot, however, defeat a motion for a bill of particulars simply by turning over discovery to the defense. Indeed, when a defendant has received voluminous discovery in a complex case, a bill of particulars may be necessary to prevent the volume of discovery from itself impeding, rather than assisting, the defense in its understanding of the government's case. *See, e.g.*, *Mahaffy*, 446 F. Supp. 2d at 119-20 ("The discernible principle, then, is that a large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial.").

To date, the Government has produced tens of thousands of documents and voluminous data—multiple terabytes worth of data—from numerous cellular telephone extractions. This

massive amount of discovery already disclosed (not to mention the amount of information still to come) further supports Mr. Ortiz's request for a bill of particulars. Courts have repeatedly recognized that an unusually large pool of discovery weighs strongly in favor of requiring a bill of particulars because, without one, the defense is swamped by the preliminary task of finding the useful needles in the haystack of documents. This is true even in cases where the amount of discovery was less than what Mr. Ortiz is faced with here. *See, e.g.*, *Bortonovsky*, 820 F.2d at 575 (reversing fraud convictions where trial court abused its discretion by denying motion for bill of particulars and leaving defendants to face a "mountain[] of" 4,000 documents); *United States v. Davidoff,* 845 F.2d 1151, 1155 (2d Cir.1988) (fact that Government produced 6,000 pages of discovery did not obviate need for bill of particulars in complex prosecution); *see also United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) ("[I]t is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided or by relying on a governmental open file policy."); *United States v. McQuarrie*, Criminal No.: 16-cr-20499, 2018 WL 372702, at *6 (E.D. Mich. Jan. 11, 2018) (holding that a "defendant may be denied notice of the charges" against him "when the relevant information is provided in a manner reminiscent of the proverbial needle in the haystack.").

"Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Schlesinger*, 261 F. App'x 355, 359 (2d Cir. 2008) (quoting *Panza*, 750 F.2d at 1148). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky,* 820 F.2d at 574. The issue faced by Mr. Ortiz "is one of failure . . . to designate." *Nachamie*, 91 F. Supp. 2d at 568. The information sought by Mr. Ortiz has neither been provided in the Indictment or in an *acceptable* form. "Because the Government has declined to identify which of the documents provided to the

defense pursuant to Rule 16(a)(1)(C) it intends to use in its case-in-chief at trial, it must, instead, respond to an appropriate bill of particulars." *Id.*, at 572.

Because the Indictment fails to provide Mr. Ortiz with sufficient notice of the particulars, and the Government has not provided that information in an acceptable alternative form (*i.e.*, discovery), he will be unable to adequately prepare his defense and will suffer unfair and prejudicial surprised at trial as a consequence of a denial of a bill of particulars. A bill of particulars is necessary to cure these deficiencies.

### B. The Court should direct the Government to file a bill of particulars specifying how Mr. Ortiz allegedly entered the conspiracy.

The Indictment fails to explain *how* Mr. Ortiz entered into this alleged conspiracy. The Indictment begins by describing Mr. Clase and Mr. Ortiz's conspiracy with an indefinite number of bettors to rig pitches (by throwing "specific types and speeds of pitches") so that the online bettors would profit from wagering on that insider information. *See* ECF No. 1, ¶ 1. The Government then describes the scheme as a multi-year conspiracy beginning in May 2023 when Mr. Clase agreed with "Bettor-1 and others to throw specific pitches in certain MLB games." *Id.*, ¶ 13. Mr. Clase allegedly participated in this scheme for the next 24 months.

Then, "[i]n or around June 2025," Mr. Ortiz allegedly "joined the criminal scheme with [Mr. Clase] and the Bettors." *Id.*, ¶ 30. This is *all* the Indictment says with respect to how Mr. Ortiz entered, or, in the Government's words "joined," the alleged conspiracy. It does not say how Mr. Ortiz learned of the conspiracy, with whom Mr. Ortiz communicated or agreed to join the conspiracy, in what form those communications were, what Mr. Ortiz's intent or knowledge with respect to the conspiracy was, or any other relevant information necessary for Mr. Ortiz to adequately prepare a defense.

This vague one-sentence summarization of how Mr. Ortiz "joined" a purported ongoing, multi-year criminal conspiracy during its final month leaves him guessing with absolutely no knowledge of what the Government intends to utilize at trial to prove its case-in-chief. A bill of particulars is appropriate to inform Mr. Ortiz "of the specific acts of which he is accused." *See United States v. Ragano*, 740 F. Supp. 3d 179, 185 (E.D.N.Y. 2024). Here, that means specifically how Mr. Ortiz allegedly entered the conspiracy, including when exactly this happened, who was involved, how he communicated his agreement, and to whom he communicated his agreement.

If the Government has such information, the Government should be required to disclose particulars with respect to time of day of alleged offense and exact date of alleged offense. *See United States v. Roberts*, 264 F. Supp. 622 (S.D.N.Y. 1966). Relevant here, where a defendant's involvement is limited and particular information as to him has not been provided, his request for the time, location, and persons present at the time of the alleged transaction may be granted so that he may properly prepare his defense. *See United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989). Because Mr. Ortiz's alleged participation in the conspiracy is confined to a limited period of time, it is appropriate to compel the Government to identify the date on which he joined the conspiracy. *See e.g. United States v. Phillips*, No. 1:11CR180, 2011 WL 3704114, at *3 (N.D. Ohio Aug. 22, 2011); *see also United States v. McGhee,* No. 3:06CR19, 2007 WL 1296009, at *3 (E.D. Tenn. May 1, 2007) (motion for bill of particulars granted as to the date of the conspiracy where the conspiracy was alleged to have lasted from January 2000 to approximately November 2005, and the defendant's involvement in the conspiracy was a time period shorter than the entire conspiracy); *United States v. Santiago*, 174 F. Supp. 2d 16, 37 (S.D.N.Y. 2001) (directing the Government to produce a bill of particulars consisting of how the defendant is alleged to have participated in the narcotics conspiracy; the

approximate dates and times of that participation; and the identities of any unindicted co-conspirators with whom the defendant participated in the narcotics conspiracy that the Government intends to reference at trial); *United States v. Jackson*, No. 2:21-CR-00113, 2022 WL 17076193, at *5 (D. Vt. Nov. 18, 2022) (when the indictment provided the defendant with insufficient particularity to prepare a defense, the Government was ordered to identify with greater specificity the dates and locations involved in the alleged crime).

### C. The Court should direct the Government to file a bill of particulars specifying how and when Mr. Ortiz conspired to certain pitches.

Just as the Indictment lacks information as to how Mr. Ortiz allegedly entered the conspiracy, it contains scant information about how Mr. Ortiz agreed to throw balls—the only overt act identified by the Government with respect to Mr. Ortiz. For both Subject Pitches, the Government included only a conclusory allegation without any factual basis. *See* ECF. No. 1, ¶ 31 ("Before the June 15 Game, [Mr. Ortiz] agreed with the defendant [Mr. Clase] that in exchange for approximately $5,000, [Mr. Ortiz] would throw a ball for his first pitch in the second inning of the June 15 Game ('Subject Pitch-1')."); ECF. No. 1, ¶ 37 ("Before the June 27 Game, [Mr. Ortiz] agreed with the defendant [Mr. Clase] that in exchange for approximately $7,000, [Mr. Ortiz] would throw a ball for his first pitch in the third inning of the June 27 Game ('Subject Pitch-2').").

The "essence" of a conspiracy "is an agreement to commit an unlawful act," and this allegation lacks even minimal specificity to inform Mr. Ortiz how or when he allegedly agreed to intentionally throw specific pitches. *See United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003) (quoting *Iannelli v. United States,* 420 U.S. 770, 777 (1975)). Instead, the Indictment refers to an indefinite period of time ("Before the June 15 Game") and lacks specificity with respect to who said what. ECF. No. 1, ¶ 31. Unless the Court orders a bill of particulars, the Government will surprise Mr. Ortiz with the "essence" of the two wire fraud conspiracy counts at trial. Mr. Ortiz

11

cannot prepare a defense to these counts using the scarce information in the Indictment. He will be severely prejudiced, absent a bill of particulars.

The Indictment is also factually deficient with respect to Mr. Ortiz's intention to benefit from Subject Pitch-2. Although the Government mistakes payment for a horse as the transfer of a bribe for Subject Pitch-1 (ECF. No. 1, ¶¶ 35–36), there is no such allegation for Subject Pitch-2. In fact, the Indictment is silent as to how Mr. Ortiz intended to benefit from Subject Pitch-2. The Government alleges that Mr. Clase, Mr. Ortiz, and Bettor-1 agreed that Mr. Ortiz and Mr. Clase would receive approximately $7,000 each for Subject Pitch-2, *see* ECF. No. 1, ¶ 37, but the description of the alleged conspiracy ends there. Allegations regarding a transfer of funds to Mr. Ortiz or Mr. Clase are nowhere to be found in the Indictment.

The Government cannot fulfill its obligation to identify with sufficient particularity key events of the criminal conspiracy merely by providing mountains of documents to defense counsel—the relevance of which is "shrouded in mystery." *Bortnovsky*, 820 F.2d at 575. But that is exactly what it has done by providing terabytes of data without any specification as to how the productions relate to the Government's case-in-chief against Mr. Ortiz. The Government may argue that the information sought here is contained somewhere in the mountains of documents it has provided to defense counsel. But based on a preliminary review by defense counsel, there are no documents that satisfy these requests or fill in the gaps where the Indictment is unclear. In any event, the Government's obligations are not satisfied until it identifies with particularity how it intends to prove the case against Mr. Ortiz.

This Court should direct the Government to file a bill of particulars clarifying these key events, including when the agreements to throw Subject Pitches 1 and 2 occurred, how the

12

agreements were memorialized, and exactly how Mr. Ortiz benefitted from his alleged agreement to throw Subject Pitch-2.

> **D.     The Court should direct the Government to file a bill of particulars identifying the basis for the Government's characterization of the purposes of certain messages.**

With regard to Subject Pitch-1, the Indictment characterizes certain messages exchanged between Mr. Ortiz and Mr. Clase "regarding [Mr. Ortiz's] receipt of money for throwing Subject Pitch-1." ECF No. 1, ¶ 35. The Indictment, however, lacks a basis for this characterization, and the messages themselves appear innocuous. A bill of particulars is necessary to clarify the Government's basis for alleging that these messages related to the charged criminal conduct.

First, the Government alleges that, on or about June 18, 2025, "[Mr. Ortiz] sent text messages to "Mr. Clase" regarding [Mr. Ortiz's] receipt of money for throwing Subject Pitch-1." ECF No. 1, ¶ 35. Specifically, it is alleged that Mr. Ortiz sent a photograph of Ortiz Associate-1's identification card and told Mr. Clase to "tell them to put the 90 thousand pesos there are and to keep the other ones[.] Keep the 200 and the 90 to that person today please[.]" *Id.* Neither the photograph nor the text message mentions Subject Pitch-1, expressly or implicitly, or makes inferences about Subject Pitch-1 or the alleged conspiracy in any way. The Indictment speculatively links the messages to the alleged conspiracy, without any factual support, and in doing so fails to explain in a manner understandable by Mr. Ortiz how the Government arrived at its characterization of the messages or how the Government will purportedly tie these messages to Subject Pitch-1.

Next, the Government alleges that, on or about June 19, 2025, Mr. Clase sent Mr. Ortiz a photograph of a wire transfer and an audio message "directing [Mr. Ortiz] to cause his associates in the Dominican Republic to lie about the purpose of the funds [Mr. Ortiz] was receiving." ECF

13

No. 1, ¶ 36. This characterization is fraught with holes. Again, nowhere in the message itself or anywhere else in the Indictment is there anything to support the Government's characterization of the messages as supportive of the alleged conspiracy and criminal in nature. Again, there is no factual support for a conclusory link to the alleged conspiracy. Again, Mr. Ortiz is left in the dark as to how the Government intends to connect these messages and Subject Pitches 1 or 2 and therefore cannot prepare a defense.

  Lastly, the foregoing messages appear to be the Government's sole basis for the honest services wire fraud conspiracy count alleged against Mr. Ortiz. See ECF No. 1, ¶¶ 43-44. In a prosecution for honest services fraud under a bribery theory, "[t]he key inquiry is whether, in light of all the evidence, an intent to give or receive something of value in exchange for an [] act has been proved beyond a reasonable doubt." *United States v. Avenatti*, 432 F. Supp. 3d 354, 366 (S.D.N.Y. 2020) (quoting *United States v. Bruno*, 661 F.3d 733, 743-44 (2d Cir. 2011)). In the Indictment, the Government contends Mr. Clase instructed Mr. Ortiz to cause his associates to lie about "the purpose of funds [Mr. Ortiz] *was receiving*." ECF No. 1, ¶ 36 (emphasis added). But the Indictment contains no facts or allegations about how Mr. Ortiz "was receiving" those funds. This element is necessary to the Government's Section 1346 honest services charge against Mr. Ortiz. *See Skilling v. United States*, 561 U.S. 358, 368 (2010) ("Because [the defendant's] alleged misconduct entailed no bribe or kickback, it does not fall within § 1346's proscription."). The Government's contention in Paragraph 36 of the Indictment alleging these were "funds [Mr. Ortiz] was receiving" is therefore unspecific and problematic. ECF No. 1, ¶ 36. Mr. Ortiz cannot adequately prepare a defense to this charge without knowing how Mr. Ortiz allegedly intended to, or actually did receive a bribe or kickback. The Government must clarify this generally vague allegation.

A bill of particulars setting forth the Government's factual basis for contending these messages were sent for a criminal purpose is necessary for Mr. Ortiz's defense. Without this specific information, Mr. Ortiz will be prejudiced and left guessing in advance of trial by the Government's withholding of this specific information or refusal to sufficiently clarify these key facts it must prove at trial.

   **E. The Government should be required to identify agreed-upon "materially false or fraudulent" statements or representations in furtherance of a wire fraud.**

"In cases involving fraud, courts have required the Government to specify through a bill of particulars which documents or transactions it intends to prove are fraudulent if this information is not ascertainable; otherwise, in effect, the burden of proof impermissibly may shift to the defendant to prove the documents or transactions are not fraudulent." *United States v. Rinsch*, No. 25-CR-85 (JSR), 2025 WL 2972226, at *9 (S.D.N.Y. Oct. 22, 2025) (quoting *United States v. Vaid,* 16 Cr. 763 (LGS), 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017)). In *Rinsch*, the district court ordered the Government to provide a bill of particulars specifying each of the materially false statements that it will contend at trial were made by the defendant or his agents to the victim of the defendant's allegedly fraudulent scheme for the purpose of executing that scheme. *See* 2025 WL 2972226, at *9.

Here, the Government fails to identify with adequate specificity any agreed-upon "materially false or fraudulent" statements or representations in furtherance of a wire fraud. ECF No. 1, ¶ 42). Thus, the Government should be required to provide the defense a written specification of each of the materially false statements that it contends were made by Mr. Ortiz for purposes of executing the allegedly fraudulent scheme.

### F. This complex conspiracy case warrants a bill of particulars.

Though the standards governing motions under Rule 7(f) are familiar, that does not mean they are easy to apply in individual cases. *See Bin Laden,* 92 F. Supp. 2d at 234 (noting that the standards "provide little guidance," demarcate lines that have proved "quite difficult to draw," and "furnish little help in disposing of requests for bills of particulars" in particular cases). In fact, "[t]he line between mere evidentiary detail and information needed to prepare a defense and prevent unfair surprise can be thin indeed." *Rajaratnam*, 2010 WL 2788168, at *1. Like in *Rajaratnam*, the complex nature of this case weighs in favor of granting the requested bill of particulars. This case is undoubtedly complex, and "the potential for unfair surprise and the difficulty of preparing a defense [in a complex conspiracy case] are amplified." *Rajaratnam*, 2010 WL 2788168, at *2 (citing *Bin Laden,* 92 F. Supp. 2d at 236).

### G. A bill of particulars will promote judicial economy.

Finally, a bill of particulars will promote judicial economy in at least two ways. First, it will streamline the issues in this already complex case and less time will be wasted on unimportant or irrelevant facts or factual support that simply does not exist. *C.f. Rejput v. Synchrony Bank*, 221 F. Supp. 3d 607, 616 (M.D. Pa. 2016) (recognizing that streamlining legal issues promotes judicial economy). Second, requiring a bill of particulars may resolve some of the outstanding discovery disputes and other potential disputes in the future. If the parties have a better understanding of the facts underlying the Government's allegations against Mr. Ortiz, the parties are less likely to continue to dispute issues that may not be relevant to the case. Thus, judicial economy weighs in favor of granting the motion for a bill of particulars.

### III. CONCLUSION

As an alleged late entrant and minor participant in a multi-year sports gambling conspiracy, Mr. Ortiz's ability to prepare a defense will be prejudiced without a bill of particulars. Mr. Ortiz must understand the Government's theory of certain basic facts underlying the serious crimes it has alleged against him including when he allegedly "joined" this scheme, how and with whom he agreed to participate in the scheme, and how he benefited from his participation. As written, the Indictment lacks the fundamental facts necessary for Mr. Ortiz to prepare his defense. The bill of particulars sought by Mr. Ortiz seeks to cure those deficiencies and obtain information—or confirmation that no such information exists—necessary for preparation of his defense. Without this, Mr. Ortiz will face surprise at trial, and his substantial rights will be prejudiced.

Respectfully submitted,

Luis Leandro Ortiz Riberta, Defendant

Date: January 9, 2026

*/s/ Christos N. Georgalis*
Christos N. Georgalis (OH 0079433 *pro hac vice*)
Paul M. Flannery (OH 0091480 *pro hac vice*)
Flannery | Georgalis, LLC
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115
(216) 466-0169 (Chris)
(216) 466-0162 (Paul)
chris@flannerygeorgalis.com
paul@flannerygeorgalis.com

Elizabeth Geddes
Corva Law LLP
110 West 40th Street, Suite 1003
New York, New York 10018
liz@corvalaw.com

*Counsel for Defendant Luis Leandro Ortiz Ribera*