UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

UNITED STATES OF AMERICA,                    Case No. 1:25-cr-00346-KAM

                Plaintiff,

      v.

LUIS LEANDRO ORTIZ RIBERA,

                Defendant.

-------------------------------------------------------- X

## DEFENDANT LUIS ORTIZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SEVERANCE

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.   The Indictment alleges markedly different levels of culpability for Mr. Clase and Mr. Ortiz. .................................................................................................................... 2

    B.   Mr. Clase's attorneys are likely exculpatory witnesses for Mr. Ortiz and would be called at trial. ......................................................................................................... 4

III.   LAW AND ARGUMENT .................................................................................. 6

    A.   Severance should be granted because Mr. Ortiz will call Mr. Clase's attorneys as witnesses and introduce evidence of their involvement, inevitably resulting in a mistrial. 7

        1.   The Attorney-Witness Problem ............................................................ 7

        2.   Mr. Ortiz's Constitutional Right to Present Exculpatory Evidence .................... 7

        3.   The Conflict in This Case ....................................................................... 8

        4.   The Fork in the Road; Mistrial or Prejudice ....................................... 9

    B.   Given the defendants' likely mutually antagonistic defenses, severance is warranted because prejudice to Mr. Ortiz likely will arise. .............................................. 10

    C.   The extent of Mr. Clase's involvement and communications with coconspirators could lead a jury to erroneously confer guilt upon Mr. Ortiz despite a lack of evidence. .......... 14

    D.   Mr. Ortiz's intention to adjourn the May trial date will prejudice Mr. Clase's right to a speedy trial. ............................................................................................................ 16

III.   CONCLUSION .................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................................ 16

*Chambers v. Mississippi*, 410 U.S. 284 (1973) ............................................................... 8

*Giglio v. United States*, 405 U.S. 150 (1972) ................................................................ 16

*Giuffre v. Dershowitz*, 410 F. Supp. 3d 564 (S.D.N.Y. 2019) ........................................ 7

*Kotteakos v. United States*, 328 U.S. 750 (1946) .......................................................... 14

*Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269 (2d Cir. 2004)7

*Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121 (E.D.N.Y. 2013) ..................... 7

*United States v. Barret*, 824 F. Supp. 2d 419 (E.D.N.Y. 2011) ..................................... 6

*United States v. Bin Laden*, 109 F. Supp. 2d 211 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008) ....................................... 13

*United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991) .........................................11, 13

*United States v. Copeland*, 336 F. Supp. 2d 223 (E.D.N.Y. 2004)...................11, 12, 13

*United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) ......................................... 4, 5, 10

*United States v. Desena*, 287 F.3d 170 (2d Cir. 2002) ................................................... 8

*United States v. Escobar*, 462 F. App'x 58 (2d Cir. 2012).............................................. 8

*United States v. Faltine*, No. 13-CR-315 KAM, 2014 WL 4370811 (KAM) (E.D.N.Y. Sept. 2, 2014) ................................................................................................................................ 6

*United States v. Kliti*, 156 F.3d 150 (2d Cir. 1998) ........................................................ 9

*United States v. Kwang Fu Peng*, 766 F.2d 82 (2d Cir. 1985) ................................... 7, 10

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) ...................................................11

*United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017) .........................11, 13, 14

*United States v. Volpe*, 42 F. Supp. 2d 204 (E.D.N.Y. 1999) ...................................11, 13

*Wright v. Duncan*, 31 F. Supp. 3d 378 (N.D.N.Y. 2011), aff'd, 500 F. App'x 36 (2d Cir. 2012) ... 8

*Zafiro v. United States,* 506 U.S. 534 (1993) .......................................... 6, 8, 13, 14, 16

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. V .......................................................................................................... 7

U.S. Const. amend VI ......................................................................................................... 8

**STATUTES**

18 U.S.C. § 3161 ................................................................................................................ 16

**RULES**

Federal Rule of Evidence 401 ........................................................................................... 15

Federal Rule of Evidence 403 ........................................................................................... 15

Federal Rule of Evididence 404 ........................................................................................ 15

Federal Rule of Criminal Procedure 8 ................................................................................ 6

Federal Rule of Criminal Procedure 14 .............................................................................. 6

Federal Rule of Criminal Procedure 16 ............................................................................ 16

New York Rules of Professional Conduct § 3.7 ................................................................. 7

## I.    INTRODUCTION

Defendant Luis Leandro Ortiz Ribera moves for severance of his trial from co-defendant Emmanuel Clase De La Cruz under Federal Rule of Criminal Procedure 14(a). A joint trial will result in severe and irremediable prejudice to Mr. Ortiz for four independent reasons. First, Mr. Ortiz intends to call Mr. Clase's attorneys as critical impeachment witnesses to expose, and otherwise introduce the fact, that Government witnesses made sworn exculpatory statements to those attorneys—statements directly contradicting the inculpatory testimony the Government now expects at trial. Because Mr. Clase's counsel cannot serve simultaneously as advocates and witnesses, a joint trial will either force a mistrial or deprive Mr. Ortiz of essential exculpatory evidence. Second, one of Mr. Ortiz's likely defenses—that to the extent Mr. Clase represented Mr. Ortiz's likely pitching strategy to Bettors, he did so without Mr. Ortiz's knowledge it would be used for betting purposes—is mutually antagonistic to Mr. Clase's claim of innocence, effectively positioning Mr. Ortiz as a "second prosecutor." Third, the Government alleges Mr. Clase orchestrated a multi-year conspiracy involving suspect pitches ███████████ over the course of at least two years, while Mr. Ortiz is accused of throwing only two pitches during a twelve-day span in June 2025 with no alleged contact with Bettors; the resulting spillover of voluminous evidence relevant only to Mr. Clase creates an unacceptable risk the jury will impute Mr. Clase's conduct to Mr. Ortiz. Fourth, Mr. Clase intends to preserve his speedy trial right and proceed to trial in May 2026, while Mr. Ortiz will seek a reasonable continuance to adequately prepare his defense; absent severance, either ruling on Mr. Ortiz's continuance motion will prejudice one defendant. For these reasons, severance is required to ensure Mr. Ortiz receives a fair trial.

## II.    BACKGROUND

### A.    The Indictment alleges markedly different levels of culpability for Mr. Clase and Mr. Ortiz.

The Government has charged Mr. Ortiz and Mr. Clase, both Major League Baseball ("MLB") players and pitchers for the Cleveland Guardians, with four counts: wire fraud conspiracy, honest services wire fraud conspiracy, conspiracy to influence sporting contests by bribery, and money laundering conspiracy. ECF No. 1, ¶ 41–48. The Indictment describes a multi-year scheme to throw specific pitches in certain MLB games beginning around May 2023, but it alleges that Mr. Ortiz joined only for the final month of the conspiracy, in June 2025, by allegedly throwing two—and only two—subject pitches. *Id*., ¶¶ 14, 30.

For his part, the Government alleges Mr. Ortiz agreed to throw one specific pitch in two instances. *Id*., ¶ 30. First, it asserts that Mr. Ortiz "agreed with [Mr. Clase] that in exchange for approximately $5,000, [Mr. Ortiz] would throw a ball for his first pitch in the second inning" of a game on June 15, 2025. *Id*., ¶ 31. According to the Indictment, Mr. Clase subsequently communicated this "advance information" to Bettor-1 for $5,000. *Id*., ¶ 31. Bettor-1 and Bettor-2 placed wagers on Mr. Ortiz's pitch ("Subject Pitch-1") and won approximately $26,000. *Id*., ¶ 33. The following day, an associate of Mr. Clase directed Bettor-1 to transfer $10,000 to individuals in the Dominican Republic. *Id*., ¶ 34. Although the Indictment includes multiple paragraphs detailing communications between Mr. Clase and Bettor-1, it contains zero allegations Mr. Ortiz ever communicated with anyone but Mr. Clase. Regarding Mr. Ortiz's communications, the Indictment purports to summarize a series of text and audio messages between Messrs. Clase and Ortiz regarding Mr. Ortiz's share of the alleged kickback. *Id*., ¶¶ 35, 36.

Second, before the June 27, 2025, game in Cleveland, the Government alleges Mr. Ortiz agreed with Mr. Clase to throw a ball for his first pitch in the third inning. *Id*., ¶ 37. Mr. Clase "arranged" his own $7,000 kickback payment with Bettor-1 and also obtained tickets for Bettor-1 to attend the game. *Id*., ¶ 37. Bettor-1, Bettor-2, and several other Bettors placed wagers[1] on Mr. Ortiz's pitch ("Subject Pitch-2") and won approximately $37,000. *Id*., ¶ 39. The Indictment does not state whether Mr. Ortiz (or Mr. Clase for that matter) actually received any money from the gambling proceeds or otherwise benefited from Subject Pitch-2. And, again, the Indictment contains no allegation Mr. Ortiz ever communicated with or even knew the existence of any of the Bettors. Overall, the Government alleges that the Bettors won at least $60,000 on the two pitches thrown by Mr. Ortiz. *Id*., ¶ 40.

According to the Government, Mr. Ortiz's role in the alleged conspiracy involved communicating with Mr. Clase and committing the act of throwing two pitches during a 12-day span— in contrast to Mr. Clase's alleged years-long involvement, communications with Bettor-1, and throwing ███ at-issue pitches. The Government does not allege Mr. Ortiz communicated with the anonymized Bettors or any other co-conspirators—other than Mr. Clase—during his limited involvement in the alleged conspiracy. Instead, it is the Government's contention, without specifying what Mr. Ortiz knew (if anything), that Mr. Clase shared information with Bettor-1 regarding Subject Pitch-1 and "requested and received" related kickbacks for his role. *Id*., ¶¶ 30, 32, 33. As to Subject Pitch-2, the Government contends Mr. Clase communicated in advance with Bettor-1 and provided him with cash, presumably to be used for bets on the pitch. *Id*., ¶ 38.

---

[1] The Indictment suggests that Mr. Clase withdrew money from a bank and "provided approximately $15,000 of [that] cash" to Bettor-1 for wagers on Subject Pitch-2. ECF No. 1, ¶ 38.

**B.    Mr. Clase's attorneys are likely exculpatory witnesses for Mr. Ortiz and would be called at trial.**

On January 13, 2026, the Government notified the Court "of a potential [*Curcio*] conflict involving Michael Ferrara, Esq., Michael Bronson, Esq., Lindsay Gerdes, Esq., and Riley Able, Esq., of the law firm Dinsmore & Shohl ("Dinsmore"), counsel for [Mr. Clase]." ECF No. 66, at 1. Pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) the Government alerted the Court that, in or around August and October 2025, Mr. Clase's counsel participated in pre-indictment interviews of at least four potential Government witnesses. ECF No. 66, at 1–2. No non-lawyers or investigative personnel were present for these interviews. *Id*.

During these defense interviews, lasting multiple hours, the witnesses repeatedly, specifically, and expressly denied knowledge of or participation in the alleged criminal scheme. Certain of the witnesses then signed declarations in which they denied under the penalty of perjury, among other things, any communication with Mr. Clase about pitches he or Mr. Ortiz would throw, any discussions with Mr. Clase about gambling, and any knowledge of inside information that would benefit gambling. These same witnesses—presumably after they were made aware that they faced criminal prosecution and potential immigration consequences—later told the Government the opposite during a *second* interview with law enforcement, seemingly bolstering the Government's cases against Mr. Clase and Mr. Ortiz. *Id*., at 1–2.

To the extent Mr. Clase's counsel seeks to impeach the witnesses at trial and introduce evidence of the substance and circumstances of their prior statements exculpating Mr. Clase and Mr. Ortiz, their ability to do so is gutted by defense counsel's prohibition to act "as both attorneys and witnesses" and "give or suggest factual information to the jury" at trial. *Id*., at 6. In short, because Mr. Clase's attorneys cannot function as witnesses in response to Government witness statements, Mr. Clase's attorneys cannot testify or otherwise convey that the witnesses provided

4

exculpatory information during their interviews of the witnesses and cannot rebut any suggestion that the witnesses were pressured, duped or otherwise confused in giving highly exculpatory statements. They can only stand there as the Government witnesses give testimony entirely opposite their sworn declarations. As the Government concedes, Mr. Clase's counsel *must* testify should they seek to "perfect [the] impeachment" of witnesses who may deny any aspect of making the exculpatory statements to counsel. ECF No. 66, at 6. Thus, according to the Government, a potential, but waivable by Mr. Clase, conflict may ripen at trial.

The Court held a *Curcio* hearing as to Mr. Clase during the January 15, 2026, status conference. With the assistance of independent *Curcio* counsel, Mr. Clase knowingly and voluntarily chose to continue representation by Dinsmore after being fully informed of potential conflicts. *See* Minute Entry (entered Jan. 16, 2026). In doing so, Mr. Clase chose to proceed with counsel who *cannot* effectively impeach material witnesses because of the witness advocate rule. He chose to forego the option of introducing witnesses with highly exculpatory information for both Mr. Clase and Mr. Ortiz.

Mr. Ortiz, however, did *not* (and will not) waive that conflict. The Court did not ask for Mr. Ortiz's position at the hearing. He did not waive, and will not waive, any rights. Although the Government made clear that no direct conflict exists as to Mr. Ortiz or his counsel, the information Mr. Clase's attorneys possess and the testimony they would provide is highly exculpatory for Mr. Ortiz. Should any of these witnesses inculpate Mr. Ortiz at trial (which they certainly will just by testifying to the alleged existence of the charged conspiracies), Mr. Ortiz plans to call Mr. Clase's attorneys as witnesses at trial to impeach Government witnesses. In fact, Mr. Ortiz intends to go even further—he will make it clear to the jury that 1) the witnesses knew they were talking to Clase's defense counsel, the same ones sitting in the courtroom, 2) the witnesses and Mr. Clase's

attorneys spoke for hours, 3) Mr. Clase's attorneys made the witnesses aware of the ramifications of false statements in a sworn declaration, and 4) the witnesses, in the presence of Mr. Clase's attorneys, signed sworn declarations attesting to the fact that Mr. Clase **and** Mr. Ortiz were not involved in any gambling. Given that the Government's entire case against Mr. Ortiz appears to rest on the testimony by one of these witnesses that Mr. Clase involved Mr. Ortiz, it is critical for Mr. Ortiz to impeach the credibility of these witnesses.

## III.    LAW AND ARGUMENT

Federal Rule of Criminal Procedure 14(a) allows a court to "sever the defendants' trials" if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." *United States v. Faltine*, No. 13-CR-315 KAM, 2014 WL 4370811, at *3 (KAM) (E.D.N.Y. Sept. 2, 2014). Even when defendants are properly joined under Rule 8(b), severance is appropriate when the risk of prejudice is apparent. *See United States v. Barret*, 824 F. Supp. 2d 419, 432 (E.D.N.Y. 2011). Such prejudice exists when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539 (1993).

Here, severance is appropriate for several reasons. ***First***, Mr. Ortiz will almost certainly seek to call Mr. Clase's attorneys as witnesses and detail for the jury the exculpatory conversations the Government's witnesses had with the attorneys—which would inevitably result in a mistrial. ***Second***, Mr. Ortiz's defense at trial likely would be mutually antagonistic to Mr. Clase's defense. ***Third***, spillover evidence from the disproportionate amount of evidence that is solely relevant to Mr. Clase would unfairly and severely prejudice Mr. Ortiz. ***Fourth***, while Mr. Clase intends to preserve his right to a speedy trial, Mr. Ortiz intends to waive the right and seek a continuance to effectively prepare for a complex trial.

**A.**   **Severance should be granted because Mr. Ortiz will call Mr. Clase's attorneys as witnesses and introduce evidence of their involvement, inevitably resulting in a mistrial.**

A severance is required to preserve Mr. Ortiz's constitutional right to call as defense witnesses certain of Mr. Clase's attorneys who witnessed several of the alleged Bettors fully exculpate Mr. Ortiz (and Mr. Clase). While Mr. Clase has a constitutional right to his choice of counsel and has elected to proceed to trial without calling his lawyers as witnesses, Mr. Ortiz has not—and will not—waive his right to call these critical witnesses. The only means to achieve both outcomes is to sever the trials.

1. The Attorney-Witness Problem

An attorney cannot serve as both advocate and witness. When an attorney assumes both roles, it "so blur[s] the line between argument and evidence that the jury's ability to find facts is undermined." *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 140 (E.D.N.Y. 2013) (quoting *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282–83 (2d Cir. 2004)); *see also Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 578 (S.D.N.Y. 2019) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact.") (quoting N.Y. Rules of Prof'l Conduct § 3.7). This prohibition extends not only to calling the attorney as a witness, but also to introducing evidence that places the attorney in the position of a witness—such as suggesting that the attorney's prior conversations with a Government witness exculpate a defendant. *See United States v. Kwang Fu Peng*, 766 F.2d 82, 83–84 (2d Cir. 1985).

2. Mr. Ortiz's Constitutional Right to Present Exculpatory Evidence

When the attorney is a key source of exculpatory evidence for the defendant, the solution, as a matter of law, ***cannot*** involve preventing that testimony. Under the Fifth Amendment, "a

defendant has a constitutional right to present witnesses in his own defense and challenge the state's allegations through the proper introduction of exculpatory evidence." *Wright v. Duncan*, 31 F. Supp. 3d 378, 396 (N.D.N.Y. 2011), aff'd, 500 F. App'x 36 (2d Cir. 2012) (citing *Chambers v. Mississippi*, 410 U.S. 284 (1973)). The Sixth Amendment "guarantees a defendant the right 'to have compulsory process for obtaining witnesses in his favor.'" *United States v. Escobar*, 462 F. App'x 58, 64 (2d Cir. 2012) (quoting U.S. Const. amend. VI.). "[A] violation of due process and compulsory process"—and therefore severe prejudice—arises when a defendant is prevented from introducing a witness who "would have provided 'favorable evidence which was neither cumulative nor irrelevant.'" *Escobar*, 462 F. App'x at 64 (quoting *United States v. Desena*, 287 F.3d 170, 176 (2d Cir. 2002)). Even absent a Constitutional violation, a defendant may be prejudiced, and severance therefore may be appropriate, when "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *See Zafiro,* 506 U.S. at 539.

### 3.  The Conflict in This Case

Before the Indictment was filed, counsel for Mr. Clase interviewed several individuals who denied participation in or knowledge of the alleged gambling conspiracy. ECF No. 66, at 1. No investigators or non-lawyers were present during these interviews. *Id*., at n.2. Some of those individuals even executed sworn declarations prepared by counsel denying their knowledge or participation in the criminal scheme. *Id.* Mr. Clase's counsel subsequently reported this information to the Government and provided the executed declarations. *Id*., at 2–3.

Based on discovery the Government has produced to date, it appears that some of those individuals have recanted some or all of their exculpatory statements and may be called as witnesses by the Government. Critically, we believe that one of those individuals may be the only

witness who will testify that Mr. Ortiz had knowledge of the alleged conspiracy. Thus, impeachment of that witness is critical for Mr. Ortiz's defense at trial, and if necessary, Mr. Ortiz will seek to call one or more of Mr. Clase's lawyers to complete the impeachment.[2]

During a *Curcio* hearing held on January 15, 2026, Mr. Clase knowingly and voluntarily chose to continue representation by Dinsmore after being fully informed of potential conflicts of interest. *See* Minute Entry (entered Jan. 16, 2026). Mr. Ortiz did not participate in the *Curcio* hearing—as the undersigned are under no such conflict or potential conflict—and did not waive any of his rights.

### 4. The Fork in the Road; Mistrial or Prejudice

The present circumstances, absent severance, create the near certainty of either a mistrial or a prejudicial preclusion of highly exculpatory evidence for Mr. Ortiz. The Government's representations that "one or more Witnesses will testify at trial that the Witness provided false information to [Mr. Clase's] counsel" and that "the Witness knowingly signed the false declaration" are sufficient bases for severance at this stage. *See* ECF No. 66, at 3. This conflict, while waivable in theory by Mr. Clase, was not waived by Mr. Ortiz and is *unavoidable* under these facts. It will likely ripen in the middle of the defense's case in chief at a joint trial. If the witnesses deny prior sworn statements inconsistent with their testimony at trial, or if they mischaracterize the circumstances of the declarations, Mr. Ortiz must either leave the testimony effectively unrebutted or call Mr. Clase's counsel as sworn witnesses for impeachment purposes, resulting in their disqualification. *See United States v. Kliti*, 156 F.3d 150, 156 (2d Cir. 1998)

---

[2] The Government made clear that no conflict exists as to Mr. Ortiz or his counsel. ECF No. 66, at n.1.

("When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony.").

The Second Circuit addressed this precise scenario in *Peng*, 766 F.2d at 84. There, defense counsel cross-examined a government witness with whom he had met at his office and had an exculpatory conversation. *Id.* Following the witness's testimony that the lawyer had threatened him, defense counsel requested permission to testify in rebuttal or to allow another lawyer from his firm to testify. *Id.* The district court found that counsel "would still be placed before the jury in the dual roles of both advocate and unsworn witness, with personal knowledge of disputed facts," *id.* at 85, and concluded that there was a "manifest necessity" to declare a mistrial. *Id.* at 84. The Second Circuit affirmed this decision, finding that because the jury may consider the testimony "so important" to the defense's theory of the case, "[t]he matter in which [the attorney's] credibility was implicated was not of merely tangential importance to the trial." *Id.* at 87. In other words, the defendant was entitled to present that evidence but there was no way to do so without violating professional rules.

In light of the *Curcio* issue, this case—in its current joint posture—is on the inevitable track for either a mistrial in the same manner as in *Peng* or reversible error because of severe prejudice for Mr. Ortiz. The only solution before the mistrial-or-prejudice fork-in-the-road is for this Court to sever the trials.

**B.** **Given the defendants' likely mutually antagonistic defenses, severance is warranted because prejudice to Mr. Ortiz likely will arise.**

At trial, Mr. Ortiz may argue that to the extent Mr. Clase told any of the Bettors that Mr. Ortiz could be expected to throw certain pitches or had joined the conspiracy, he did so falsely and without Mr. Ortiz's knowledge or consent. This theory will be mutually antagonistic to Mr. Clase's

theory of his own innocence. Severance is warranted because unfair prejudice will arise by Mr. Ortiz's functioning as a "second prosecutor" in a joint trial.

Mutually antagonistic defenses arise when a jury cannot logically accept both defendants' defenses as true, such as when one defendant's theory of defense (*i.e.*, Mr. Clase was not involved in the conspiracy) is incompatible with another defendant's theory (*i.e.*, Mr. Clase—but not Mr. Ortiz—participated in the conspiracy). *See United States v. Copeland*, 336 F. Supp. 2d 223, 224 (E.D.N.Y. 2004); *United States v. Shkreli*, 260 F. Supp. 3d 247, 253 (E.D.N.Y. 2017) ("A defense is mutually antagonistic 'or irreconcilable if, in order to accept the defense of one defendant, the jury must of necessity convict a second defendant.'") (quoting *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991)). In effect, a defendant's counsel may become a "second prosecutor," providing the jury with two theories (his own and the government's) upon which to convict his co-defendant. *See Copeland*, 336 F. Supp. 2d at 224; *see also United States v. Volpe*, 42 F. Supp. 2d 204, 210 (E.D.N.Y. 1999).

"[M]utually antagonistic or irreconcilable defenses may be so prejudicial in some circumstances" as to justify severance. *See Copeland*, 336 F. Supp. 2d at 224 (quoting *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998)). Such defenses "may violate a specific trial right of a defendant by compromising the opportunity to present an individual defense." *Volpe*, 42 F. Supp. 2d at 210. "The antagonism in the defenses thus may inhibit the jury from evaluating the evidence against each defendant based on that defendant's own acts and statements, before concluding the prosecution has proved its case beyond a reasonable doubt as to each defendant." *Id*.

Because Mr. Ortiz may argue that Mr. Clase (falsely) described Mr. Ortiz to the Bettors as a willing and knowing participant in the conspiracy, without actually involving Mr. Ortiz or making him aware of the conspiracy, his defense at trial may be mutually antagonistic to Mr. Clase's defense. For example, Mr. Clase had access to scouting reports and other information from which he could have reasonably predicted how Mr. Ortiz would throw or endeavor to throw a certain pitch at a certain time. ███████████████████████████████ █████████████████████████████████████████████ ██████████████ Alternatively, Mr. Clase may have abused his relationship with Mr. Ortiz as friends and teammates by convincing Mr. Ortiz to throw certain pitches at certain times— ostensibly for baseball reasons as far as Mr. Ortiz was aware. Mr. Clase may have then relayed this advance information to the Bettors in furtherance of their conspiracy, without ever informing or involving Mr. Ortiz. In any event, these theories would involve suggesting that the jury convict Mr. Clase but acquit Mr. Ortiz, turning Mr. Ortiz into a "second prosecutor" against Mr. Clase. *See Copeland*, 336 F. Supp. 2d at 224.

A jury could not logically accept both Mr. Clase's and Mr. Ortiz's defenses. Mr. Clase would argue he did *not* participate in a conspiracy. Mr. Ortiz would argue Mr. Clase *did* participate in a conspiracy and falsely suggested that Mr. Ortiz also participated. Acceptance of one defense precludes the other, as both theories hinge on Mr. Clase's guilt. This is why Mr. Ortiz would function as a "second prosecutor"—he would be arguing *for* a co-defendant's guilt as a way to explain the evidence against him, the markedly different evidence against his alleged co-conspirator, and why he is not guilty but his co-conspirator is.

These are the type of circumstances where mutually antagonistic defenses may be so prejudicial as to justify severance. *See Copeland*, 336 F. Supp. 2d at 224. This is not "mere finger pointing among co-defendants," which involves co-defendants accusing each other instead of one defendant accusing another and "is not sufficient to warrant severance." *Id.* Rather, this is Mr. Ortiz's counsel, in an effort to seek his acquittal by explaining why Mr. Clase may have represented to others that Mr. Ortiz was involved, imploring the jury *to convict Mr. Clase*, but not Mr. Ortiz. *See Volpe*, 42 F. Supp. 2d at 210. This is an acceptance by Mr. Ortiz of the strength of the Government's case against Mr. Clase, and leaning into that while explaining the evidence in a way that proves his own innocence. Put another way, this defense would amount to an acceptance by Mr. Ortiz of the strength of the Government's case against Mr. Clase, while explaining the evidence in a way that proves his own innocence, and would cast Mr. Ortiz as a *victim* of Mr. Clase's scheme, rather than a knowing and willing participant.

These are unique circumstances, distinguishable from other instances where severance due to mutually antagonistic defenses was not appropriate and analogous to cases where severance was granted. Unlike in *Zafiro*, where "two defendants both claim[ed] they [were] innocent and each accuse[d] the other of the crime," here only one defendant is accusing the other of a crime due to a monumental difference in the evidence against them. *See Zafiro,* 506 U.S. at 540. Unlike in *Volpe*, Mr. Clase's defense and Mr. Ortiz's defense are necessarily incompatible— ████████████ ████████████████████████████████████ *See Volpe*, 42 F. Supp. 2d at 211. Similarly, unlike in *Bin Laden*, these defense theories "conflict to the point of being so irreconcilable as to be mutually exclusive." *United States v. Bin Laden*, 109 F. Supp. 2d 211 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008) (quoting *Cardascia*, 951 F.2d at 484). Unlike in *Shkreli*, these defenses do "require

a jury to find one defendant guilty if that jury accepts the other defendant's defense." *Shkreli*, 260 F. Supp. 3d at 247. The specific facts of this case, namely the stark differences between Mr. Clase's and Mr. Ortiz's involvement and the lack of alleged communication between the latter and the Bettors, create a dynamic where the co-defendants' theories of defense are necessarily and irreconcilably incompatible.

### C. The extent of Mr. Clase's involvement and communications with coconspirators could lead a jury to erroneously confer guilt upon Mr. Ortiz despite a lack of evidence.

Severance is also necessary to avoid the spillover prejudice that would occur should Mr. Ortiz and Mr. Clase be tried jointly. A court should grant a severance where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. This could occur when "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id*. That "evidence of a codefendant's wrongdoing . . . erroneously could lead a jury to conclude that a defendant was guilty." *Id*. This risk of spillover evidence against one defendant poisoning a co-defendant is heightened when defendants with "markedly different degrees of culpability" are tried together in a complex case. *Id*. (citing *Kotteakos v. United States*, 328 U.S. 750, 773 (1946)).

Mr. Ortiz and Mr. Clase's "markedly different degrees of culpability" are easily measured in this case. *See id.* The Government alleges that Mr. Clase threw suspect pitches ███████ ██████ over a 26-month span in furtherance of the crimes charged; the Government alleges that Mr. Ortiz threw only two pitches over a 12-day span in furtherance of the crimes charged. *See* attached **Exhibit A** ████████████████████████████████████████████

██████████████████████████████████████████████████████████

14

██████████████████ The Government alleges that Mr. Clase communicated directly with Bettor-1 for the full duration of the alleged conspiracy, while Mr. Ortiz had no contact with (or even knowledge of the) Bettors during his limited role. The Government has suggested that a joint trial could take several weeks; thus, Mr. Ortiz could be sitting in front of a jury for weeks while the Government presents voluminous evidence only relevant to Mr. Clase. If severed, Mr. Ortiz's trial would likely finish in a matter of days, not weeks.

At bottom, the Government's evidence against Mr. Clase predating June 2025 has no probative value as to whether Mr. Ortiz knowingly joined a conspiracy in June 2025 or whether Mr. Ortiz threw two specific pitches with criminal intent during the 12-day span. At most, this evidence *potentially* shows that Mr. Clase was involved in a conspiracy—not that Mr. Ortiz was involved in or even knew of the alleged conspiracy. The prejudicial effect of this evidence, however, is overwhelming. A jury presented with 26 months of alleged criminal conduct by Mr. Clase—including suspect pitches ████████, dozens of communications with Bettor-1, cash transfers, and coordination of illegal wagers—faces an unacceptable risk of imputing an alleged extensive criminal enterprise to Mr. Ortiz based solely on his association with Mr. Clase as teammates. Put another way, a jury may improperly conclude that in light of the sheer number of occasions on which the Government alleges Bettors unlawfully placed winning bets on Mr. Clase's pitches, the Bettors must have had the same upper hand as to Mr. Ortiz's pitches. *Cf.* Fed. R. Evid. 404(b) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). It must be excluded under Rules 401 and 403 as to Mr. Ortiz.

15

Significantly, given the prejudicial nature of this evidence, there are no "less drastic measures, such as limiting instructions," *Zafiro*, 506 U.S. at 539, available to cure any risk of spillover prejudice from a joint trial. The introduction of a mountain of evidence admissible solely against Mr. Clase followed by an instruction to the jury to only consider it against Mr. Clase is insufficient. Severance of the joint trials is the only measure to prevent intolerable prejudice to Mr. Ortiz's defense.

### D.    Mr. Ortiz's intention to adjourn the May trial date will prejudice Mr. Clase's right to a speedy trial.

Finally, Mr. Ortiz and his defense team require additional time to review the terabytes of discovery provided by the Government—much of which is in a language foreign to his attorneys—to prepare motions and to effectively prepare for trial.[3] Should the Court adhere to the trial date of May 4, 2026, Mr. Ortiz will not have a sufficient opportunity to effectively prepare. But a severance—which is otherwise more than justified for the reasons set forth herein—would enable Mr. Ortiz the time he needs to effectively prepare for trial without offending Mr. Clase's right to a speedy trial, pursuant to 18 U.S.C. § 3161.

---

[3] The Government has framed its provision of a two-terabyte hard drive containing the contents of four cellular telephones as a favor to the Defendants. *See* attached **Exhibit B** ███████████████████████████████████████████████████████████ Not so. The provision of the hard drive was necessary for the Government to comply with its obligations under Rule 16, *Brady* and *Giglio*, and Mr. Ortiz's attorneys need time beyond May 4, 2026, to continue to review that material (and other material provided by the Government), file motions, investigate the allegations lodged against Mr. Ortiz and otherwise prepare for trial.

## III.    CONCLUSION

This Court should sever Mr. Clase's and Mr. Ortiz's trials because of the substantial prejudice to Mr. Ortiz absent a severance, including the differing degrees of culpability, spillover evidence, inability to call Mr. Clase's attorneys as witnesses, and mutually antagonistic defenses.

Respectfully submitted,

Luis Leandro Ortiz Riberta, Defendant

Date:   February 5, 2026

*/s/ Christos N. Georgalis*
Christos N. Georgalis (OH 0079433 *pro hac vice*)
Paul M. Flannery (OH 0091480 *pro hac vice*)
Flannery | Georgalis, LLC
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115
(216) 466-0169 (Chris)
(216) 466-0162 (Paul)
chris@flannerygeorgalis.com
paul@flannerygeorgalis.com

Elizabeth Geddes
Corva Law LLP
110 West 40th Street, Suite 1003
New York, New York 10018
liz@corvalaw.com

*Counsel for Defendant Luis Leandro Ortiz Ribera*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2026, the foregoing document was filed in this matter using the Court's electronic filing system. Notice of this filing will be sent to all represented parties via the Court's electronic filing system.

Luis Leandro Ortiz Riberta, Defendant

Date:  February 5, 2026      /s/ Christos N. Georgalis
Christos N. Georgalis (OH 0079433 *pro hac vice*)

*Counsel for Defendant Luis Leandro Ortiz Ribera*