**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:EWS/SMS/RMU
F. #2025R00435

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 23, 2026

By ECF & E-mail

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Emmanuel Clase de la Cruz, et al.
Criminal Docket No. 25-346 (S-1) (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter in opposition to the defendants' motions (ECF No. 223, Clase Motion to Compel ("Clase Mot."), ECF No. 228, Ortiz Motion to Compel ("Ortiz Mot."), and ECF No. 243, Vasquez Motion for Joinder ("Vasquez Mot.")) seeking sanctions, exclusion of witnesses, and other relief for alleged violations of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

The defendants have identified four witnesses who they claim have exculpatory information. In other words, they say these four witnesses—whose identities they have known for months, and one of whom gave defense counsel an exculpatory declaration before the case was even charged—have information they allege shows their clients are not guilty. Yet, they turn Brady on its head by asking the Court to prohibit those very witnesses with supposed exculpatory information from testifying. And they make that request, along with a laundry list of other extraordinary remedies, based on the government's disclosure of witness statements nearly *three months before trial*.

The government is aware of its Brady obligations, takes them seriously, and has at all times complied with them. Defense counsel are well aware that the government's disclosures have gone above and beyond what Brady requires. The government does not want to burden the Court with additional briefing, but because these motions level serious accusations, the government must respond with the utmost diligence. These motions are without merit. The defendants have all the information they claim was withheld, and they have it more than seventy days before trial.

I. The Challenged Individuals

The instant motions arise out of the government's production of material pursuant to Giglio v. United States, 405 U.S. 150 (1972), as well as its early disclosure of 18 U.S.C. § 3500 information on August 21, 2026. The defense contends that prior to its August 21, 2026, disclosure, the government should have disclosed the following specific information contained in reports from law enforcement interviews of Bettor-1 [redacted] Bettor-1's brother [redacted], and two other Bettors, Bettor-3 [redacted] and Bettor-4 [redacted] (collectively, the "Challenged Individuals") that they claim is exculpatory. They seek to exclude the testimony from all four of the Challenged Individuals because those individuals told the government the following (the "Challenged Information"):

Bettor-1 [redacted].

- [redacted]

- [redacted].

Bettor-3 [redacted]]:

- [redacted]

Bettor-1's Brother [redacted].

- [redacted].

Bettor-4 [[redacted]]:

- [redacted]

## II. The Challenged Individuals Were Long Known to the Defendants

### A. Major League Baseball Provided the Defendants with the Identities of the Challenged Individuals in July and August 2025

In July and August 2025, and thus before the government brought charges in the instant case, Major League Baseball ("MLB"), in the context of its own investigation into whether the defendants had engaged in sports betting violations of MLB rules, made information requests to Clase and Ortiz. In those requests, MLB sought any communications or financial transactions involving a number of individuals. As relevant to the instant motion, the information requests listed all four of the Challenged Individuals. In response to MLB's requests, in July and August 2025, both Clase and Ortiz submitted letters to the Major League Baseball Players Association ("MLBPA") indicating that they did not know any of those individuals. Thus, the defendants have known that these individuals are relevant to the alleged betting scheme since as early as July and August 2025.

### B. The Defendants Obtained a False Exculpatory Declaration from Bettor-1 in August 2025 and Asked Bettor-1 About Some of the Bettors

In August 2025, defense counsel participated in a series of phone conversations and in-person meetings with Bettor-1. During those conversations, Bettor-1 falsely told Clase's counsel that he had never placed any wagers on Clase's pitches based on advance inside information from Clase. Bettor-1 subsequently executed a declaration to that effect on August 6, 2025. Accordingly, the defense has known that Bettor-1 had information they viewed as exculpatory since as early as August 2025.[1] In addition, according to Bettor-1, during those meetings, Clase's attorneys asked Bettor-1 about certain names, including at least three of the Bettors whose names MLB previously provided to Clase's counsel (as noted above, MLB provided a list of names that included the Challenged Individuals).[2]

### C. The Defense told the Government the Defendants Did Not Know Any of the Challenged Individuals in September 2025

On September 12, 2025, and September 17, 2025, respectively, counsel for Ortiz and Clase separately made presentations to the government in an effort to dissuade the government from bringing charges against their clients. During the presentations, counsel provided the government with the lists of individuals about whom MLB had requested information, which included all four of the Challenged Individuals. See Exs. A and B. During their presentations, counsel represented to the government that Clase and Ortiz did not know anyone on MLB's lists,

---

[1] As noted below, Ortiz's counsel shared portions of the Bettor-1 declaration with the government in September 2025, again before the government brought criminal charges in this case, indicating that they too were aware that Bettor-1 had information that they viewed as exculpatory at least as early as September 2025.

[2] While the government does not possess the information, Clase's counsel likely has records indicating whether they asked Bettor-1 about the Challenged Individuals.

including the Challenged Individuals. See id. In particular, Clase's counsel represented "Clase does not know these individuals" and "has never communicated with them." See Ex. B at 27. In other words, Clase's counsel represented that they had conferred with their client about these very individuals—including Bettor-3—and learned that, according to Clase, their client did not know any of them. Over one year after their presentation, having now received the § 3500 material that includes this very same proposition—that certain Challenged Individuals had never met Clase—they claim that this information was somehow "suppressed" by not being disclosed until over two months before trial.

Ortiz Presentation

[redacted]

<u>Clase Presentation</u>

[redacted]

[redacted]

Counsel for Ortiz and Clase both included portions of Bettor-1's false declaration in their respective presentations to the government, putting them on notice that he had potentially useful information:

Ortiz Presentation

[redacted]

Clase Presentation

[redacted]

D. <u>The Government Disclosed the Identities of the Challenged Individuals to the Defendants on Numerous Occasions in 2025</u>

On November 5, 2025, the grand jury returned the initial indictment in this case. The indictment referenced anonymized "Bettors," described as individuals who had placed wagers on the outcomes of pitches thrown by Clase and Ortiz. See ECF No. 1 ¶ 11. On December 30, 2025, the government provided the defendants with a letter disclosing certain information, including the identities of the individuals who had been anonymized in the indictment. See Ex. C. Specifically, the letter included the names of all four of the Challenged Individuals, among names of other Bettors and relevant individuals. Below the list of names, the government included the following statements regarding these individuals:

> While not conceding that the information described in this letter or contained in the accompanying exhibits falls within the scope of the government's Brady obligations, the government is providing the information and exhibits to you in an abundance of caution. The government does not concede the relevance, materiality or admissibility of any of the information in this letter or the enclosed exhibits. Nor does the government concede that you are entitled at this time to additional statements of the witnesses identified above or the identities of, or statements made by, any other prospective government witnesses.
>
> To the extent that the individuals referred to above, referenced in the exhibits attached to this letter, or other individuals interviewed by the government made inconsistent or contradictory statements regarding their involvement in, or knowledge of, the charged scheme, that information may constitute Giglio material that the government will produce "in time for its effective use at trial." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001).

See Ex. C, at 3.

On January 5, 2026, the government provided the defendants with a second letter containing the disclosure of additional information. See Ex. D. In particular, the government disclosed summaries of certain statements made by Bettor-1 and Bettor-3 to law enforcement agents, including, as relevant here, the following:

<u>Bettor-1</u>

- [redacted]
- [redacted]

[redacted]

- [redacted]

- [redacted]

- [redacted]

- [redacted]

- [redacted]

Bettor-3

- [redacted]

Below the summaries, the government provided the following additional information putting the defendants on notice that Bettor-1 and Bettor-3 may have had additional information:

> Please note that some of the individuals described above made other statements that are inconsistent with the above-described statements, including, in some instances, recantations of the above-described statements. To the extent the government elects to call any of the above-described individuals as witnesses at trial, the government will disclose these additional statements in accordance with the schedule ordered by the Court for the disclosure of materials pursuant to 18 U.S.C. § 3500 and Giglio v. United States, 405 U.S. 150 (1972).

The government also provided contact information for counsel for Bettor-1 and Bettor-3 so defense counsel could contact the Bettors if they so desired.[3]

E. The Government Exceeded its Disclosure Obligations by Producing the Entire Contents of All Devices Obtained From Third-Parties During the Investigation, Including Devices Belonging to Bettor-1 and Bettor-1's Brother

The government's disclosures went well beyond what Brady requires. For example, in addition to the fulsome disclosures described above, the government provided the defendants with the full contents of devices that the government obtained from third parties during its investigation, including devices from Bettor-1 and Bettor-1's brother, two of the Challenged Individuals. Specifically, by letter dated December 23, 2025, Clase demanded the full contents of phones, citing a purported Brady claim. Ortiz subsequently joined in Clase's demand. See Exs. E and F. On January 5, 2026, in response to those requests, the government provided the defendants will the full extractions of numerous devices, including devices belonging to Bettor-1 and Bettor-1's brother. The government noted the following:

> [W]hile full extractions of devices obtained from third parties during the government's investigation are not generally discoverable, the government will provide you copies of such extractions, pursuant to your requests (see Clase Ltr. at 6; accord Ortiz Ltr. at 7 (joining in Clase demands)) and subject to the terms of the Protective Order, to facilitate your preparation for trial. Please provide us with a 2 TB hard drive so the government can promptly produce the materials to you.

See Ex. D at 4.

F. The Defendants' Earlier Motion to Compel and the Court's Decision Denying Their Motions

On January 9, 2026, the defendants filed a joint motion to compel "exculpatory materials" related to statements made by certain witnesses. See ECF No. 58. On January 13, 2026, the government filed its opposition arguing that inconsistent statements made by witnesses constitute Giglio, not Brady, material. See ECF No. 62. In its February 2, 2026, Order, the Court agreed with the government that the requested materials were not exculpatory, rather the materials bore on the credibility of the witnesses. See United States v. de la Cruz, 25-CR-346 (S-1) (KAM), 818 F. Supp. 3d 472, 483 (E.D.N.Y. 2026)

The Court explained that the Second Circuit has "held that suppressed evidence that is both inculpatory and exculpatory can constitute a Brady violation if the "'exculpatory character harmonizes with the theory of the defense.'" Id. (quoting United States v. Mahaffy, 693 F.3d 113, 130 (2d Cir. 2012)). However, this Court made clear that the defendants had "not explained how

---

[3] The government has conferred with Bettor-1's brother as well as counsel for Bettor-1, Bettor-3, and Bettor-4, and understands that defense counsel has not made any effort to speak with any of those witnesses.

the requested material harmonizes with the defense's theory," thus concluding that while the witness statements were inconsistent, they were not exculpatory. Id. The Court ordered that the witnesses' inconsistent statements be produced as Giglio material prior to trial. Id. The Court further held that disclosure by the Giglio deadline (March 27, 2026 at that time), which was 45 days before trial (then scheduled for May 11, 2026), was sufficiently in advance of trial and that it would "provide the Defendants with evidence in time for its effective use at trial." Id. As noted above, the Challenged Information was provided on August 21, 2026, 73 days before trial, well exceeding the Giglio deadline originally set by the Court.

G. The Government Provided Early § 3500 Material With Its *Giglio* Disclosures

On August 21, 2026, the government provided Giglio and § 3500 material to the defendants, which included the law enforcement reports referenced in the defendants' motions. In particular, the government disclosed, among other things, law enforcement reports of interviews of the Challenged Individuals containing the Challenged Information.

On the same day, consistent with United States v. Charmer Industries, Inc., 711 F.2d 1164 (2d Cir. 1983), and its progeny, the government submitted multiple Pretrial Services Reports to the Court for its in-camera review. See ECF No. 198. On September 4, 2026, the government released to the defendants information from those Pretrial Services Reports that was authorized for disclosure by the Court. The government undertook this process over two months before trial.

H. The Government Provided a List of Pitches for Trial

In the indictment and superseding indictment, the government identified 12 examples of rigged pitches thrown by Clase which the government alleged were in furtherance of the charged conspiracies. See ECF Nos. 1, 80. At a status conference held on January 15, 2026, the Court asked the government to provide the defense with "an idea as to what other dates for pitches you claim are not legal pitches." See Ex. G at 54. In response, the government explained that the pitches in the indictment were examples and that the government's investigation as to Clase was ongoing. See id. The government further explained that "the evidence will be very clear about which pitches we intend to present as over, you know, as evidence in furtherance of the conspiracy in advance of trial." Id.

In response, the Court stated, "[w]ithout prejudice to the government, why don't you provide the additional pitches that you claim are illegal pitches to Mr. Clase's attorney or Mr. Ortiz as well, what additional pitches beyond those specified in the indictment." Id. at 55 (emphasis added). The government confirmed that it would provide a list, and noted, consistent with the Court's statement of no prejudice, that the list may change as the government prepared for trial. See id. at 57 ("We just want to make sure that it's clear that as information continues to develop as we prepare for trial, there may be some additional ones, it may change, so that's fine.").

In accordance with the Court's order, two weeks later on January 29, 2026, the government provided the defendants with a list of pitches that the government was actively

investigating and therefore might feature at trial.[4] Consistent with the discussion during the status conference, the government explained that "[a]t this time, the government anticipates that it will prove at trial that pitches thrown by defendant Clase on one or more of the dates below were in furtherance of the scheme charged in the indictment." See Ex. G at 54. The government further stated that "[a]s the Court and the government noted during the status conference on January 15, 2026, the above list is subject to change without prejudice as the government's investigation continues and the parties prepare for trial. Accordingly, the government reserves the right to supplement or modify the list above." See id.

Several months after in his motions in limine, Clase indicated that he remained uncertain as to which pitches, if any, the government would offer at trial as proof of the charged conspiracies. See ECF No. 221, at 26. In an effort to respond to the defendants' purported difficulties preparing for trial and in an effort to streamline its case, the government decided to narrow the focus of its evidentiary presentation of the acts it intended to prove at trial that furthered the conspiracy. Consequently, on September 18, 2026, the government informed the defendants that it intended to only offer evidence at trial that one or more of eighteen of Clase's pitches were acts in furtherance of the charged schemes. See Ex. H. Twelve of the pitches had been included in the superseding indictment, and all eighteen were included in the government's initial list of pitches produced to the defendants in January 2026. The government noted that it did not intend to argue that any specific pitches beyond those in the list were made in furtherance of the charged schemes. Contrary to the defendants' representation to the Court in their recent sur-reply, see ECF No. 247, the government never stated that any of the pitches contained on the initial list were not acts in furtherance of the charged scheme. The government has never taken the position asserted by the defendants that the initial list of potential pitches for trial were "not crimes at all, but ordinary baseball plays." Id.

I. The Instant Motions

In an attempt to manufacture violations of Brady and its progeny, the defendants now contend that the materials documenting interviews of the Challenged Individuals are "replete with exculpatory evidence," Clase Mot. at 6; and that Bettor-1's admission in a law enforcement interview on February 19, 2026, is "exculpatory within the meaning of Brady," Ortiz Mot. at 6. Clase and Ortiz allege that the government's failure to promptly disclose this "exculpatory" information amounts to both a violation of the Court's Rule 5(f) Order and "bad faith." See Clase Mot. at 12-17; Ortiz Mot. at 7-10. Both parties seek extraordinary and unprecedented remedies for these alleged violations. Vasquez joins in his co-defendants' motions "insofar as they concern the Government's delayed disclosure of favorable information regarding Bettor-1 and other

[4] The government provided the defendants with a list of 48 specific dates and noted that the gambling data previously produced to the defendants could be readily filtered to identify the pitches from those dates. After defense counsel indicated that they had difficulty determining the specific pitches from the list, the government on February 6, 2026, provided an even more detailed version of the same list. The government again noted that it anticipated proving that one or more of the pitches were acts in furtherance of the charged scheme, that the list was subject to change without prejudice, and that the government reserved the right to supplement or modify the list.

Government witnesses whose anticipated testimony bears upon the charges against Mr. Vasquez, and insofar as they seek the prompt production of any remaining Brady, Giglio, and other favorable material subject to disclosure." Vasquez Mot. at 1.

Clase's proposed remedies include preclusion of all Challenged Individuals' testimonies, Clase Mot. at 18; sanctions against the government attorneys, id. at 19; production of all remaining Giglio material, § 3500 material, and trial exhibits by September 18, 2026, id. at 19-20; an adverse inference instruction, id. at 20; disclosure of "a copy of the Pretrial Services Report for any government witness interviewed in connection with an arrest for the charged conduct" (id.); and for all materials currently under seal in this case to be unsealed, id. at 20-21. Along the same lines, Ortiz proposes the preclusion of Bettor-1's testimony, Ortiz Mot. at 10-13; an adverse inference instruction regarding untimely disclosure of Bettor-1's statement, id. at 13; and the "immediate production of all grand jury testimony, agent reports and agent interviews in connection with the government's investigation," id. Though he "joins the relief requested [by his co-defendants] to the extent that such relief is applicable to him," he "does not purport to adopt factual assertions concerning prejudice or circumstances unique to his co-defendants." Vasquez Mot. at 1.

## III. Legal Background

### A. Standard Principles of *Brady* and *Giglio*

"[T]he Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." See ECF No. 75 ("Brady Op."), at 7 (quoting United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). "To demonstrate a Brady violation, a defendant must show that: '(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice.'" Brady Op. at 7–8 (quoting Coppa, 267 F.3d at 140).

"For the timing of the disclosure, courts have repeatedly held due process requires 'that Brady material be disclosed in time for its effective use at trial.'" Id. (citing Coppa, 267 F.3d at 142 (collecting cases)). "Neither the Second Circuit nor the Supreme Court has specified the timing of disclosure that Brady requires, but it is clearly established that 'disclosure prior to trial is not mandated.'" Ward v. Herbert, 509 F. Supp. 2d 253, 260 (W.D.N.Y. 2007) (citation omitted); accord United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974) ("Neither Brady nor any other case we know of requires that disclosures under Brady must be made before trial."); United States v. Nordlicht, No. 16-CR-640 (BMC), 2019 WL 235640, at *3 (E.D.N.Y. Jan. 16, 2019) ("Brady does not require the disclosure of evidence before trial."). "The only timing requirement with production of exculpatory and impeachment material is to disclose it before 'it is too late for [the defendants] to make beneficial use of it at trial.'" Nordlicht, 2017 WL 4797829, at *3 (internal quotation marks omitted)). "Thus, for example, even where the government produced Brady material on the fourth day of trial, there was no Brady violation because the defendants still had time to use it effectively at trial." United States v. Persico, 645 F.3d 85, 111-12 (2d Cir. 2011); United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978) (finding no Brady violation where the defense learned about a witness's "contradictory statements shortly after the opening of the trial").

Brady did not create a right to discovery of all information that would be useful to a defendant in preparing for trial. Weatherford v. Bursey, 429 U.S. 545, 559-60 (1977) (fact that purported co-defendant was government undercover agent was not Brady material). As former Judge Gleeson has observed, "Brady does not demand an 'open file' policy or give the defendant the right to search through the prosecution's files for potentially relevant information." 1-18 Federal Criminal Practice: A Second Circuit Handbook § 18-5 (citing Kyles v. Whitley, 514 U.S. 419, 437 (1995)). And evidence is not "favorable" merely because it is not affirmatively incriminating. United States v. Scarpa, 913 F.2d 993, 1010-11 (2d Cir. 1990) (tape recordings of conversations in which defendants made statements that were either innocuous or relevant only to uncharged crimes were not discoverable under Brady).

Finally, the government is required only to disclose the necessary facts to permit the defendant to take advantage of exculpatory evidence; "it is not required to draw inferences from that evidence which defense counsel is in an equal position to draw." United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987). Therefore, as the Second Circuit has held, "[e]vidence is not 'suppressed' if the defendant either knew, . . . or should have known, . . . of the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982); see also United States v. Diaz, 922 F.2d 998, 1007 (2d Cir. 1990) (defendant on notice of witness's testimony that defendant was not present during offense because defendant knew underlying facts); United States v. Esposito, 834 F.2d 272, 275-76 (2d Cir. 1987) (defense counsel had possession of transcripts containing exculpatory material before trial). For example, if a witness provides exculpatory testimony to the grand jury, the government satisfies its Brady obligations if it identifies the witness to the defendant; the government has no obligation to provide the testimony itself. United States v. Grossman, 843 F.2d 78, 84-85 (2d Cir. 1988); see also Leroy, 687 F.2d at 618 ("the Government is not required to disclose grand jury testimony to a defendant who is 'on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish.'") (quoting United States v. Stewart, 513 F.2d 957, 600 (2d Cir. 1975); United States v. Shamsideen, No. 03 CR.1313(SCR), 2004 WL 1179305, at *7–8 (S.D.N.Y. Mar. 31, 2004) (government not obligated under Brady to provide defendant with grand jury testimony of two witnesses when defense had witnesses' identities and addresses and were told witnesses "may have exculpatory information").

B. Rule 5(f), *Brady*, and *Giglio*

Federal Rule of Criminal Procedure 5(f) does not expand the government's obligations under Brady but serves as a "[r]eminder" of the government's preexisting obligations. See Fed. R. Crim. P. 5(f) (titled "Reminder of Prosecutorial Obligation" and serving to "confirm[] the disclosure obligation of the prosecutor under Brady . . . and its progeny, and the possible consequences of violating such order under applicable law"); see also United States v. Sanchez, No. 22-CR-120 (JLS), 2023 WL 5944123, at *9 (W.D.N.Y. May 5, 2023) ("Courts have recognized that 'the Due Process Act reaffirmed, but did not expand, preexisting prosecutorial obligations in discovery, pursuant to Brady v. Maryland.'" (collecting cases)); United States v. Tournant, No. 22-CR-276 (LTS), 2023 WL 5001186, at *3 (S.D.N.Y. Aug. 4, 2023) (Rule 5(f) directs the government to produce materials "in a manner consistent with the duties enunciated in Brady . . . and its progeny"); United States v. Russo, No. 20-CR-23 (DLI), 2021 WL 1723250, at *6 (E.D.N.Y. Apr. 30, 2021) (Rule 5(f) order "confirm[s] the prosecution's continuing disclosure

obligations" under Brady and its progeny and "summarize[s] the possible consequences of violating those obligations").

Indeed, the Rule 5(f) Orders entered in this case makes clear that it "confirm[s] the Government's disclosure obligations under Brady . . . and its progeny, and . . . summarize[s] the possible consequences of violating those obligations." See, e.g., ECF Nos. 8, 15. With respect to Giglio material, the Rule 5(f) Orders provides that impeachment information must be disclosed "sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order." Id.

C. Remedies

The "remedy for a Brady violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the Brady material available to her." United States v. Halloran, 821 F.3d 321, 342 n.14 (2d Cir. 2016) (quoting Poventud v. City of New York, 750 F.3d 121, 133 (2d Cir. 2014) (en banc)). But when a "defendant received the evidence with time to investigate and use it at trial," then "there is no Brady violation." United States v. Salman, No. 24-CR-00206 (NCM), 2026 WL 2111542, at *3 (E.D.N.Y. July 22, 2026) (quoting Coppa, 267 F.3d at 144). When a Brady disclosure is made before trial but is untimely, the typical remedy is for the Court to order an "adjournment to provide the defendant sufficient time to investigate potential leads." Id. (quoting United States v. Pizarro, Nos. 19-2391, 19-2419, 2023 WL 3332539, at *1 (2d Cir. May 10, 2023)); see also Halloran, 821 F.3d at 342 (granting one-week continuance to permit defendant to make effective use of exculpatory wiretap recordings of third-party phone number disclosed eight days into trial). The same is true if a Brady violation "surfaces mid-trial," as "[t]he customary remedy…is a continuance and a concomitant opportunity to analyze the new information and, if necessary, recall witnesses." United States v. Mathur, 624 F. 3d 498, 506 (1st Cir. 2010). Where a disclosure is made before conviction either before or during trial, courts will generally view a defendant's "failure to ask for a continuance as an indication that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously." United States v. Osorio, 929 F.2d 753, 758 (1st Cir. 1991).

Beyond granting a continuance, courts typically employ "a case-by-case approach to the failure to produce relevant evidence, at the discretion of the district court." United States v. Cook, No. 3:17-CR-65 (SRU), 2019 WL 4247938, at *16 (D. Conn. Sept. 6, 2019), aff'd sub nom. United States v. Mickens, No. 20-258, 2021 WL 3136083 (2d Cir. July 26, 2021) (quoting Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 162 (2d Cir. 2012)). While the preclusion of evidence or an adverse inference instruction may be warranted for a Brady violation in a district court's discretion in certain circumstances, these are rarely implemented remedies. Those courts that have precluded a witness's testimony, for example, have done so when the Brady violation emerged following the witness's testimony, but the exculpatory material was not so significant that it warranted the declaration of a mistrial. See, e.g. United States v. Sagastizado, No. 24-4251, 2026 WL 2655318, at *4 (4th Cir. Sept. 9, 2026) (upholding district court's instruction to jury to disregard witness's trial testimony following mid-trial Brady disclosure and rejecting defendant's argument on appeal that proper remedy was new trial). In the Second Circuit, the only cases the government has identified in which an adverse inference instruction appears to have given are those where exculpatory evidence was destroyed or went missing. But even in such a situation, which is not the case here, whether to give an adverse inference instruction is within

the sound discretion of the district court and often is inappropriate. See, e.g., United States v. Mickens, No. 20-258, 2021 WL 3136083, at *8 (2d Cir. July 26, 2021) ("Defendants have not established the claimed entitlement to an adverse inference instruction, and thus the District Court did not err in declining to give one."); United States v. Greenberg, 835 F.3d 295, 304–05 (2d Cir. 2016) (no error in district court's denial of adverse inference instruction where no showing evidence would have been exculpatory and no showing of bad faith on government's part).

## IV. Discussion

The government has not violated Brady or Rule 5(f). Defense counsel has known about the Challenged Individuals and the Challenged Information for months—and in some instances, going back to before this case even began. The Challenged Information is cumulative of the government's earlier Brady disclosures; Giglio information that was disclosed in accordance with the Court's scheduling order; or not Brady/Giglio at all. The government's timely disclosure of the Challenged Information 73 days before trial is well in time for the defense to make effective use of it. The same is true of the government's subsequent disclosure of the Clase pitches it intends to offer at trial as acts in furtherance of the charged conspiracies. The government was under no obligation to provide a modified list—all of the pitches were previously noticed to the defense—but did so anyways to aid the defense's preparation for trial. And the remedies the defendants seek are extraordinary, unprecedented, and entirely unjustified under these circumstances.

### A. There Have Been No *Brady* Violations

#### 1. The Defendants Knew the Disclosed Information and Were Otherwise Given Fair Notice for Effective Use At Trial

As an initial matter, the defendants' motions should be denied because there have been no Brady violations. The government made Brady disclosures more than nine months ago related to three of the four Challenged Individuals, Bettor-1, Bettor-1's brother, and Bettor-3. The fourth individual listed in Clase's motion—Bettor-4—is not seriously cast as a Brady witness but instead as a witness who impeaches Bettor-1. In any event, none of the Challenged Information constitutes Brady material.

##### i. Bettor-1

It is no secret to anyone, especially not the defendants, that Bettor-1 previously made statements exculpating the defendants, including statements denying the existence of a conspiracy to throw rigged pitches. Counsel for Clase obtained a declaration to that very effect before this case even began, and counsel for Ortiz presented portions of that very declaration to the government before this case even began. The Challenged Information related to Bettor-1—that there were times where Bettor-1 gave others the impression he had inside information when he did not so he could earn money for himself, as distinct from the other occasions when he truly possessed and tipped others on inside information originating from Clase—is of a piece with the

information the government disclosed on December 30, 2025 and January 5, 2026 and thus has long been known to the defense.

As the Court well knows, as early as August 2025, counsel for Clase obtained a sworn statement from Bettor-1 falsely denying the existence of a conspiracy to throw rigged pitches:[5]

[redacted]

[redacted]

[redacted]

[redacted]

On December 30, 2025, the government furnished this declaration in discovery and noticed it as potential Brady information, making defense counsel aware—even though they already knew, of course—that Bettor-1 had potentially exculpatory information. And, for good measure, the government disclosed additional statements by Bettor-1 on January 5, 2026, namely, [redacted]" Ex. D at 3. The government's January 5, 2026, letter included information about Bettor-1's attorney so the defense could pursue exculpatory information possessed by Bettor-1. It also noticed that Bettor-1 had made statements inconsistent with the government's Brady disclosures and would provide any inconsistent statements in accordance with the schedule set by the Court for the provision of Giglio information.

These disclosures squarely put the defendants on notice that Bettor-1 possessed potentially exculpatory information. Had the government merely noticed Bettor-1 as a witness

[5] At some point between August 6, 2025, the date the declaration was created and signed, and September 12, 2025, the declaration appears to have been provided to counsel for Ortiz. As noted above, on September 12, 2025, as part of a presentation given to the government, Ortiz's counsel included excerpts of the declaration in their PowerPoint presentation.

with potentially exculpatory information, that alone would have sufficed under Brady. See LeRoy, 687 F.2d at 618-19 (holding that the "government satisfied [its] Brady obligation where it put defense on notice of witnesses with favorable information, even though it did not disclose witness's exculpatory grand jury testimony); Grossman, 843 F.2d at 85 (Brady obligation satisfied where the government provided letter day before trial identifying witness who may have given exculpatory grand jury testimony but did not disclose underlying transcript); United States v. Volpe, 42 F. Supp. 2d 204, 227 (E.D.N.Y. 1999) ("Providing the names of witnesses, without full statements or summaries of whatever exculpatory information they may have, has been sufficient in this circuit for the government to be in compliance with Brady."); Stewart, 513 F.2d at 960 (collecting cases) ("The government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish."); United States v. Zagari, 111 F.3d 307, 320 (2d Cir. 1997) (no suppression of Brady information where defendant knew of witnesses who could testify about insanity of government witness).

But the government's disclosures went well beyond merely noticing Bettor-1 as a witness with potential Brady material. The particular statements disclosed by the government noticed information consistent with the defense theories that (1) no scheme to throw rigged pitches ever occurred, and (2) Bettor-1 never served as a conduit between Clase and other Bettors passing advance pitch information. Bettor-1's latest statement in February that he sometimes tipped inside information and sometimes did not is simultaneously consistent with (which is to say, cumulative) and inconsistent with (which is to say, impeaching of) his earlier-disclosed statement that he never wagered on Clase or Ortiz's pitches using inside information.

Ortiz contends that Bettor-1's challenged information is exculpatory, claiming that the jury can "credit" Bettor-1 "completely" and still acquit, because "Bettor-1 still cannot establish that genuine inside information ever existed or that it originated with Mr. Ortiz, because he admits that he repeatedly manufactured the impression of inside information when he had none." Ortiz Mot. at 6-7. That claim provides an inaccurate picture of Bettor-1's prior statements on February 19, 2026, in two respects: (1) it suggests that Bettor-1 made statements denying that "inside information ever existed," which he did not, and (2) it suggests that Bettor-1 walked back earlier inculpatory statements that he possessed information on Ortiz's two rigged pitches, which he did not. In fact, on the same page of the FD-302 report disclosed to the defense that they claim contains Brady information, the report also memorialized Bettor-1 as repeatedly saying that he had, in fact, advance information about Clase's pitches. E.g., Clase Mot. Ex 3, at 10 ("[redacted]"). It is thus impossible, as Ortiz asserts, for the jury to both "completely credit" Bettor-1 and acquit. Bettor-1's information is classic Giglio information—it reflects an inconsistency with other statements he has made and bears on his credibility. It was thus properly provided in accordance with the Court's Giglio deadline, with more than enough time for the defendants' to make effective use of it for trial. See infra.

ii. Bettor-1's Brother

Clase asserts that Bettor-1's brother's statement that he was not a gambler, had no knowledge of sports betting, and was not aware of Bettor-1's relationships with any baseball players constitutes Brady material. But the government disclosed the same information nearly

nine months earlier as part of Bettor-1's prior statements. Specifically, Bettor-1's declaration includes the following facts about his brother:

> [redacted]
>
> [redacted]
>
> [redacted]

Id. ¶¶ 16-18. The government's January 5, 2026, disclosure likewise noted that Bettor-1 previously told the government, in sum and substance, that, "[redacted]" Ex. D at 3 (emphasis added). These disclosures put the defense on notice of the same information encompassed in Bettor-1's brother's interview notes. The government's disclosures alerted the defense to information that Bettor-1's brother did not know Clase and that his first ever bet on sports was on Luis Ortiz's pitch[6]—precisely the same information he now falsely casts as newly discovered Brady material.

iii. Bettor-3

In an initial interview with the government on October 2, 2025, Bettor-3 previously told the government, in sum and substance, that he never met Clase in person. Clase appears to argue that this information constitutes Brady material because it is consistent with the principle that Clase and Bettor-3 did not know each other, thereby tending to negate the proposition that they were in a conspiracy with one another. Clase also argues that Bettor-3's statement aligns with a prior statement made by Bettor-1 about the relationship between Bettor-3 and Clase. Clase likewise argues that the lack of a relationship between Bettor-3 and Clase is inconsistent with what the government told the Court in moving to disqualify defense counsel and is thus evidence of "bad faith." Clase Mot. at 10, 12.

Bettor-3's interview statement is not Brady material for multiple reasons.

---

[6] Needless to say, it strains credulity to believe that this is even exculpatory information. But in any event, the Court can easily dispense with the motion on the grounds that the fact that Bettor-1's brother possessed potentially exculpatory information—like the other Challenged Individuals—was known to the defense.

First, as with all the Challenged Individuals, Bettor-3's identity was known to the defense before this case was even charged. In fact, Clase's counsel represented to the government that Clase did not know Bettor-3. See Ex. B; see also Ex. I at 4 ("MLB provided the names and betting data of bettors. Clase did not know any bettors other than [Bettor-1]."). Thus, the very same information reflected in Bettor-3's interview statement that Clase now challenges was expressly known to his attorneys, as reflected in an FBI report memorializing counsel's statements, which the government disclosed to the defense in December 2025.

Second, in casting Bettor-3's interview statement as Brady material, the defense omits that Bettor-3 acknowledged that he made materially false statements in that very same interview. See Ex. J at ¶ 5(a) ("[redacted] In subsequent interviews with the government, Bettor-3 conceded that he met Clase, a fact that Clase conveniently relegates to a footnote but otherwise ignores. See Mot. at 10 n.6. And as the government noticed in its January 5, 2026—*which itself disclosed that Bettor-3 possessed potentially exculpatory information*—the government would provide any "inconsistent or contradictory statements" as Giglio information in the Court's pretrial schedule, which is precisely what was done here.

Third, as explained in the government's reply in support of its motions in limine, even assuming Clase did not know Bettor-3 (which he did), that fact would not disprove that they were in a criminal conspiracy together, because "[a] single conspiracy may encompass members who neither know one another's identities, nor specifically know of one another's involvement." United States v. Sureff, 15 F.3d 225, 230 (2d Cir. 1994) (citing, inter alia, Blumenthal v. United States, 332 U.S. 539, 557 (1947) ("[T]he law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all of its details or of the participation of others.")). Therefore, even if Bettor-3 and Clase did not know one another, the Challenged Information would not be Brady material because it is not a defense to the charged conspiracies.

The defense's claims that the government made misrepresentations to the Court are utterly baseless and should be rejected. When the government told the Court that the defense provided false information to the government during the pre-charge presentation, it did so with irrefutable evidence in hand—evidence that was also available to the defense. Some of that evidence was cited in the government's motion to quash grand jury subpoenas, ECF No. 125, at 17-21, but there is more, including text messages on Clase's phones identifying Bettor-3 by name as someone who would be facilitating a kickback payment.[7] The government will thus demonstrate at trial that Bettor-3 met Clase and that they transacted—both directly and indirectly—on multiple occasions. The government has not acted in bad faith nor made misrepresentations to the Court, and Clase is not entitled to extraordinary relief on this basis.

[7] There is also substantial evidence that Clase knew other Bettors on the list of people whom counsel claims he did not know, including Bettor-3's siblings. For instance, there are multiple videos and photographs, on both Clase and Vasquez's phones, of Clase playing dominoes and socializing with certain Bettors.

iv. Bettor-4

Clase asserts that the government revealed Brady information when it disclosed that in an initial interview with law enforcement, Bettor-4 stated, in sum and substance, that he did not know whether Bettor-1 knew Clase.

Again, this information is not Brady. As before, Clase's attorneys previously represented to the government that he did not know Bettor-4, so this is not new information. And as before, Bettor-4 later acknowledged in a subsequent interview that he understood that Bettor-1 knew Clase and was getting advance pitch information from him—statements that are well corroborated text messages, multimedia, and other evidence.

2. The Challenged Information Is, At Best, Potential *Giglio*

The defendants argue that the Challenged Information was improperly characterized as Giglio material despite its "exculpatory" nature. See Clase Mot. at 6-12; Ortiz Mot. at 6. However, the Challenged Information can only be properly characterized as potential Giglio material because these statements are not exculpatory as to the defendants in this case. See United States v. Avellino, 136 F.3d 249, 257 (2d Cir. 1998) (quoting Giglio, 405 U.S. at 154) ("Undisclosed impeachment evidence is not material ... when, although 'possibly useful to the defense,' it is 'not likely to have changed the verdict.'"). Indeed, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or is subject to extensive attack by reason of other evidence, the undisclosed evidence may properly be viewed as cumulative, and hence not material, and not worthy of a new trial." Persico, 645 F.3d at 111. In fact, this Court already determined that inconsistent statements made by the witnesses in this case "are relevant to the credibility of the witnesses who have made those inconsistent statements." United States v. de la Cruz, 818 F. Supp. 3d at 483. The Court determined that where witnesses made inculpatory statements after exculpatory statements, they "fall under Giglio." Id. The Challenged Information is just that:

> Bettor-1. Specifically, the defendants have had Bettor-1's own declaration since last year, in which he falsely claimed that he never received any advance information. That very declaration provided the defendants with ammunition to impeach Bettor-1 on the stand. And because Bettor-1 had previously stated falsely that he never received advance information from Clase, it is wholly cumulative that he later stated he sometimes did not receive advance information from Clase.
>
> Bettor-3. When first interviewed by law enforcement, Bettor-3 stated that he had not met Clase. Bettor-3 has since stated that he met Clase on several occasions. Thus, the defendants may attempt to use Bettor-3's initial statement to impeach Bettor-3 on the stand when the government anticipates that he will describe the instances in which he met Clase.
>
> Bettor-4. Bettor-4 initially stated that he did not know whether Bettor-1 had communications with Clase. Bettor-4 has since clarified that he was aware that Bettor-1 was receiving advance inside information about pitches from

> Clase. Accordingly, the defendants may attempt to use Bettor-4's prior statement as impeachment material.
>
> Bettor-1's Brother. Bettor-1's brother initially stated that he was not aware that Bettor-1 knew any baseball players. He subsequently recalled that he once met Clase, when he accompanied Bettor-1 to pick up Clase from the airport.

The defendants' attempt to couch the Challenged Information as Brady material is nonsensical given the very nature of the statements at issue. As such, the Challenged Information should be treated as Giglio as the Court had previously determined. United States v. Frank, 11 F. Supp. 2d 322, 323 (S.D.N.Y. 1998) (rejecting argument that "Giglio material should be treated like all other Brady material and disclosed to him as soon as it comes into the Government's possession").

3. The Defendants Are Not Prejudiced Because the Government Provided the Challenged Information 73 Days Before Trial, Providing Them with Ample Time to Make Effective Use of the Information

In any event, the defendants will have had more than enough time to use the Giglio and § 3500 materials to support their defenses at trial. It is a "longstanding constitutional principle that as long as a defendant possesses evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Coppa, 267 F.3d at 144. The rule applies to both Brady and Giglio material. Id. at 142. In this case, the government has fully discharged its Brady and Giglio disclosure obligations.

As the Court is aware, the government promptly produced Giglio material for its potential witnesses, as well as other individuals interviewed during the course of its investigation, on August 21, 2026, per the Court's Second Amended Pre-Trial Scheduling Order. See ECF No. 166. More recently, the government produced any additional § 3500 material not included in its Giglio disclosure on September 18, 2026, and has continued to make rolling productions as new information comes into the government's possession. There are 73 days between August 21, 2026 and November 2, 2026. Seventy-three days is more than enough time for the defendants to make effective use of the material. Further still, 73 days is nearly double the amount of time this Court gave the defendants to review Giglio material prior to the original May 11, 2026 trial date, which the Court held was sufficient time to make effective use of the information. See ECF No. 53, No. 5 ("By March 27, 2026, the Government shall provide to Defendant any Giglio materials.").

Despite the government's full compliance with the Court's Scheduling Order, Clase alleges that "the government's failure to timely disclose exculpatory and impeachment evidence contained in the FBI 302 reports of these witnesses has deprived the defense of the opportunity to make use of this material in preparing for trial." See Clase Mot. at 18. But Clase makes no serious argument that he was prejudiced as contemplated by Brady. Moreover, any alleged prejudice against Ortiz is even more difficult to comprehend given the fact that, [redacted], Bettor-1 has never wavered that Ortiz provided Clase with the advance inside information as to the two pitches referenced in the superseding indictment, and the Challenged Information for the other three Challenged Individuals was unrelated to Ortiz.

Indeed, while the government has already made disclosures out of an abundance of caution and will continue to do so to the extent additional information becomes known, the law is clear that there is not a general duty to disclose Brady material before trial. See United States ex rel Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974); see also United States v. Persico, 645 F.3d 85, 111-12 (2d Cir. 2011) (disclosure on the fourth day of trial that continued for six weeks was sufficient); United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978) (government had no obligation to disclose cooperating witness' vacillation before trial); United States v. Douglas, 525 F.3d 225, 246 (2d Cir. 2008) (no Brady violation in production of witness statements three days before trial, where defense did not make showing that witnesses would have been willing to speak to defense's investigator and defense did not request adjournment); United States v. Hamilton, 373 F. App'x 95, 97-98 (2d Cir. 2010) (no Brady violation where documents were produced during trial and witnesses to whom the documents were relevant were cross-examined on their contents).

Further, the Supreme Court has held that "there is never a real Brady violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. at 281. While the government's obligations under Brady arise before or during trial, the scope of its "constitutional duty—and, concomitantly, the scope of a defendant's constitutional right—is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." Coppa, 267 F.3d at 140. Where the defendants obtain suppressed exculpatory material before trial, then prejudice exists "only if there is a reasonable probability that the result of the proceeding would have been different had the disclosure occurred earlier." United States v. Mason, 951 F.3d 567 (D.C. Cir. 2020) (quoting Strickler and applying it to belated pretrial disclosures); Coppa, 267 F.3d at 144.

Here, although the defendants contend that not having this information sooner has prejudiced both Clase and Ortiz's ability to present their defenses at trial, neither Clase nor Ortiz have proffered facts to support such a claim. As discussed above, the defendants were put on notice of the Challenged Individuals, as well as the Challenged Information, through the aforementioned declarations, MLB's requests for information from both Clase and Ortiz, the government's indictment, and the government's December and January disclosure letters. In sum, there is no reason to believe, and nothing to suggest, that the defense case has in any way been harmed because the defense did not receive these materials sooner.

B. The Government's Disclosure of the Clase Pitches it Intends to Present as Acts in Furtherance of a Conspiracy is the Latest Example of the Defense Distorting the Record

The defense claims that the government's September 18, 2026 letter, providing the defense with notice of the pitches it intends to offer at trial as acts in furtherance of the charged conspiracies revealed previously undisclosed Brady information, constitutes misconduct, and warrants "severe sanctions." ECF No. 247 at 8. All these claims are meritless.

First and foremost, the eighteen pitches on the government's modified pitch list were all encompassed on the government's initial pitch list. The notion that the defense is surprised that the government is narrowing its evidence for trial is perplexing.

Second, the government never represented to the defense that it would prove at trial that every one of the pitches on its initial disclosure was a fixed pitch. The disclosure explicitly stated that it "anticipates that it will prove at trial that pitches thrown by defendant Clase on one or more of the dates below were in furtherance of the scheme charged in the indictment." See Ex. M (emphasis added). The government also repeatedly advised the defendants, as per the Court, that the list was provided without prejudice to later modification. See id. ("As the Court and the government noted during the status conference on January 15, 2026, the above list is subject to change without prejudice as the government's investigation continues to develop and the parties prepare for trial. Accordingly, the government reserves the right to supplement or modify the list above.").

Third, while the government does not presently plan to argue at trial that pitches beyond those described in its September 18, 2026, letter were acts in furtherance of the conspiracy, the government has not conceded, as Clase suggests, that it has determined that other pitches on the government's list were not rigged. Rather, the government's modified pitch list was an effort to provide notice that it would be streamlining the presentation of the evidence at trial by limiting its proof to one or more of the 18 pitches described therein.[8] The government's intention to streamline its trial evidence is routine practice, particularly in fraud cases. For instance, if the government had charged substantive counts for each pitch and then elected not to proceed on some counts at trial, therefore dismissing them, there could be no credible argument that the government's decision amounted to a Brady violation. So too here. See Old Chief v. United States, 519 U.S. 172, 186, 189 (1997) (noting "the standard rule that the prosecution is entitled to prove its case by evidence of its own choice"); United States v. Awadallah, 436 F.3d 125, 133 (2d Cir. 2006) (holding that the government is "free to select whichever witnesses it believes will most effectively advance its case"); United States v. Feldman, 731 F. Supp. 1189, 1200 (S.D.N.Y. 1990) (noting that "where all concede that a significant number of documents have been produced by the government and will presumably be used at trial, it is right to narrow the field before trial in order to allow more effective case preparation by the defense."). The government provided a pitch list to Clase because his motion in limine made clear that he was seeking more information about the government's trial proof. That he now uses this information to accuse the government of misconduct warranting severe sanctions is outrageous.

C. The Remedies the Defendants Seek Are Wholly Improper and Unwarranted

There have been no Brady violations in this case. But even if the Court were to conclude otherwise (it should not), the remedies sought by the defendants are extreme and wholly unwarranted.

1. Preclusion of Challenged Individuals

The defendants seek to preclude the testimony of one or more of the Challenged Individuals. See Clase Mot. at 18 (seeking to preclude Bettor-1, Bettor-1's brother, Bettor-3, and

[8] Indeed, the government is not representing that it intends to introduce evidence regarding all 18 pitches, nor is the government required to do so for purposes of proving that the defendants committed the crimes charged, all of which are conspiracies.

Bettor-4); Ortiz Mot. at 12-13 (seeking to preclude Bettor-1); Vasquez Mot. at 1 (joining in the relief requested by his co-defendants "to the extent that such relief is applicable to him"). Preclusion is an extraordinary remedy. United States v. Dupree, 10-CR-627 (KAM), 2011 WL 5976006, at 9 (E.D.N.Y. Nov. 29, 2011) (finding that "the extreme remedy of witness preclusion" was not appropriate without any specific showing of prejudice); see also United States v. Candelaria-Silva, 162 F.3d 698, 703 (1st Cir. 1998) (warning against remedying Rule 16 violations by precluding evidence where that sanction "is grossly disproportionate both to the prosecutor's nonfeasance and any prejudice to the defense."). Further, where there is no showing of bad faith or prejudice, preclusion is not an appropriate sanction. See United States v. Adeniji, 31 F.3d 58, 64 (2d Cir. 1994) ("Assuming a violation of Rule 16 [for untimely disclosure by the government], reversal will only be warranted if the nondisclosure results in substantial prejudice to the defendant. By substantial prejudice, we mean [...] the defendant must demonstrate that the untimely disclosure [...] adversely affected some aspect of his trial strategy." (citations and quotation marks omitted)).

The sole authority the defendants cite for the proposition that the Court should preclude witnesses based on pre-trial disclosures of witness statements is United States v. Thomas, 25-CR-033, 2026 WL 1972091 (D. Vt. July 8, 2026). Even assuming Thomas were controlling, it is readily distinguishable from the facts of this case. There, two weeks before trial, the government disclosed exculpatory witness statements for individuals who were entirely unknown to the defense. Id. at *6 ("The May disclosures included impeachment and potentially exculpatory material concerning S.W. At the May 18 hearing, defense counsel represented that the production included proffer statements from two previously undisclosed civilian witnesses—S.W. and D.W.—discussing recantation of their testimony."). The disclosures related to one of the witnesses included 235 jail calls, which were provided 9 days before trial. The Court concluded that "it was not possible for defense counsel to review, absorb, and investigate the material." Id.

Preclusion is not warranted based on this precedent. The government has acted in good faith and has taken its Brady and Rule 5(f) obligations seriously. The Challenged Information was properly disclosed on August 21, 2026, but as noted, the defendants had notice that the Challenged Individuals had potentially helpful information well beforehand. Further, the defendants not only had access to the Challenged Information, they also had access to entire devices belonging to Bettor-1 and Bettor-1's brother since January. Evidence on these devices clearly shows some of the Challenged Individuals engaging in text messages with each other regarding the bets on pitches, as well as several videos showing the Challenged Individuals congregating together playing dominoes. It therefore cannot be the case that the defendants had no knowledge of the Bettors' relationships with one another, and their respective relationships with Clase and Ortiz. It also cannot be the case that the recent disclosure, despite the overwhelming evidence provided in Rule 16 discovery, "adversely affected some aspect of [] trial strategy" to warrant preclusion of the Challenged Individuals from testifying at trial.

Finally, to state the obvious, if the Challenged Individuals truly possessed exculpatory information, the defendants would not seek their preclusion. The defendants would affirmatively seek their testimony.

2. Sanctions

Clase separately argues that sanctions against the government attorneys "for the pattern of non-compliance with Brady obligations and the Court's orders." See Clase Mot. at 19. The Court has not once in this case found that the government violated its orders, because it has not. There have been no violations of either Brady or this Court's orders, and Clase fails to ground this request for sanctions in any precedent.

3. Production of Outstanding *Giglio* and § 3500 Material

Clase additionally requests the production of all remaining Giglio and § 3500 material, as well as the government's trial exhibits. Id. at 19-20. The government has more than fulfilled its obligations under Giglio and § 3500, and, to date, has produced all such material currently in its possession. The government provided § 3500 material early on August 21, 2026, and provided additional material on September 18, 2026, the dates ordered by the Court. The government will continue to provide any Giglio and § 3500 material it subsequently obtains in the weeks leading up to trial. At this juncture, the government is unaware of any Giglio or § 3500 material it has not provided. As for Clase's request for trial exhibits, in accordance with the Court's Scheduling Order, the government provided the parties with a list of its exhibits on August 24, 2026, and will provide its marked exhibits to the defendants by the date ordered by the Court.

4. Adverse Inference Instruction

In the alternative, both Clase and Ortiz argue that an adverse inference instruction is warranted regarding the "untimely disclosure of Bettor-1's statement." See Ortiz Mot. at 10-13. Notably, neither Clase nor Ortiz cite any caselaw to support the notion that an instruction is warranted where a Brady violation has occurred. Rather, adverse inference instructions have only been given in the rare case where the government had an obligation to preserve a record which was relevant to the defense and chose to destroy said evidence. See Chin, 685 F.3d at 162. But the government has taken no such action here. Rather, the government has provided the materials in its possession in compliance with its Brady and Giglio obligations and anticipates that some or all of the Challenged Individuals will testify in its case-in-chief. No such instructions should thus be warranted.

5. Pretrial Services Reports for Witnesses

Additionally, Clase requests that the government provide Pretrial Services Reports ("PSRs") for any government witness interviewed in connection with his arrest in this case. See Clase Mot. at 20. As the Court is aware, the Court ordered the government to disclose particular sections of the PSRs for Bettor-1 and Bettor 3. See August 26, 2026, Ex-Parte Order. Given the Court's clear instructions, the government provided the aforementioned information to the defendants. However, should the Court amend its Order based on this latest request to direct the disclosure of the full PSRs, the government will comply with the amended order.

6. Unsealing of the Entire Record

Clase falsely claims that the government has "abused" sealing in this case and requests that the entire file be unsealed as a remedy. But before Clase filed the instant motion, he unilaterally submitted his filings under seal without conferring with the government and had never before sought the government's position for unsealing any records in this case. What's more, defense counsel completely ignored the government's prior efforts to submit filings publicly with redactions. See Ex. K (government email requesting proposed redactions with respect to the government's opposition to the motions to suppress).

After defendant Clase filed the instant motion, the government wrote to the defendants to confirm that they had never previously sought to unseal any of their filings and noted that the government would be glad to meet and confer regarding any filings that the defendants believed ought to be unsealed. See Ex. L. In response, for the first time, the defendants provided a list of records that they believed ought to be unsealed. See id. The government is reviewing the list, and to the extent the parties continue to disagree, the protective order provides a procedure to seek relief from the Court. Regardless, for filings that involve grand jury process, sensitivities related to the government's ongoing investigation, and filings related to potential privilege, the defendants have presented no reason that those records should be unsealed.

7. Grand Jury Testimony, Agent Reports, and Agent Interviews

Finally, Ortiz requests the "immediate production of all grand jury testimony, agent reports and agent interviews in connection with the government's investigation." Ortiz Mot. at 13. Once again, the government has provided all § 3500 material currently in its possession. To the extent that Ortiz requests the disclosure of grand jury minutes that do not contain witness statements, Rule 6(e) guarantees grand jury secrecy which exists to protect the integrity of the criminal justice process. See In re Grand Jury Investigation of Cuisinarts, Inc., 665 F.2d 24, 32–33 (2d Cir.1981), cert. denied, 460 U.S. 1068 (1983). Moreover, Brady is not to be utilized as a discovery device to "supply a defendant with all evidence in the government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the government." LeRoy, 687 F.2d at 619; see United States v. Beasley, 576 F.2d 626, 630 (5th Cir.1978) ("Brady is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."). Given the scope of the government's Brady obligations in the Second Circuit, with respect to pretrial disclosure of any grand jury testimony, and the policies under Rule 6(e), Ortiz's request must be denied.

In sum, none of the defendants' requested remedies are warranted and the request for their implementation should be denied in its entirety.

V. Conclusion

For the foregoing reasons, the defendants' motions should be denied in their entirety.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Eric Silverberg
Sean M. Sherman
Rebecca M. Urquiola
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (KAM) (by ECF and Hand Delivery)
Counsel of Record (by ECF and E-Mail)