**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH/FTB:EWS/SMS/RMU/JS
F. #2025R00435

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 19, 2026

By ECF & E-mail

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Emmanuel Clase de la Cruz, et al.
Criminal Docket No. 25-346 (S-1) (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter to request that the Court remove the "missing witness" instruction in the Court's proposed jury charge. See ECF No. 346 at 21-22. For the reasons set forth below, the charge is unwarranted on the facts present here.[1] Because the resolution of this issue affects the remainder of the government's case-in-chief, the government respectfully requests resolution of this issue before the charging conference and prior to the government resting.

The government presumes that the proposed "missing witness" charge is designed to account for the possibility that cooperating witness Enoc Pena does not ultimately testify at trial. The government respectfully submits that the authority cited for this charge, United States v. Torres, 845 2d 1165 (2d Cir. 1988), is inapposite here. Moreover, the proposed instruction does not accurately reflect the factual situation presented in this case.

As a threshold matter, Torres held that it was not reversible error for the district court to decline to give a missing witness charge against the government despite a defense request. Id.[2] And the Second Circuit further found that even though the district court "permitted the

---

[1] The government respectfully reserves the right to propose additional modifications to the Court's proposed jury instructions before or during the charge conference.

[2] The Second Circuit summarized the district court's charge in Torres as follows: "if a potential witness was equally available to both the government and the defense but was not called by either side, the jury was free to infer that the witness's testimony would have been unfavorable to either side or both, or could draw no inference at all. The charge also indicated that availability

government to rebut the defense summation by arguing that the defense could have called [the witness at issue] too, and [the district court] slightly mischaracterized the rule on inferences that 'availability' is defined solely in terms of physical availability," these additional errors were harmless. Id.

The quoted language in the footnote in the Court's proposed jury charge cites Torres for the proposition that "[w]itnesses are not 'equally available' when they 'refus[e] to be interviewed by defense counsel,' as a 'defense lawyer can not risk calling as a witness a person who refuses to be interviewed, the substance of whose testimony remains unknown, especially where the witness has a special relationship to the government." ECF No. 22 at n.3. In context, however, the quoted language was not a holding of the Court. It instead was a summary of a defense argument raised on appeal that the Circuit implicitly rejected when it found that the district court did not commit reversible error by declining to provide a missing witness instruction against the government:

> De Leon and Valenzuela argue that Fornier was not equally available to both sides, since, despite Fornier's physical availability, his refusal to be interviewed by defense counsel made his testimony practically unavailable to the defense. They argue that a defense lawyer can not risk calling as a witness a person who refuses to be interviewed, the substance of whose testimony remains unknown, especially where the witness has a special relationship to the government.

Torres, 845 2d. at 1169-70. In contrast, the Torres court made clear that an "informant's relationship to the government and his refusal to be interviewed by the defense" are merely two "factors" to be considered among "all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility" when "analyzing whether the "informant was 'equally available' to both sides." Id. Further demonstrating that these are simply factors, rather than dispositive elements, for the Court to consider in its analysis is the Second Circuit's holding in Torres that the district court's failure to consider those factors in its analysis did not "constitute[] ground for reversal." Id. at 1170.

Here, the government respectfully submits that Torres ultimately supports the government's position that a missing witness charge is unwarranted.

First, unlike the defendants in Torres, whose arguments for inclusion of the instruction were rooted in their inability to interview the witness before testifying, defense counsel for defendant Clase in this case has conceded that they have, in fact, previously interviewed Pena and discussed with him his knowledge of the events and circumstances germane to the pending criminal charges against their clients. An affidavit by an interpreter associated with defense counsel as well as a privilege log filed in connection with earlier motions indicate that Clase's

---

meant physical availability. In addition, the judge charged that neither side had a duty to call a witness whose testimony is likely to be merely cumulative and that the jury should remember that a defendant is entitled to rely on the presumption of innocence." Torres, 845 F.2d at 1169.

defense attorneys had multiple meetings with Pena and that those meetings collectively totaled several hours. Indeed, counsel's meetings with Pena were so extensive that these meetings culminated in Pena's execution of a substantive sworn declaration that detailed in writing his purported knowledge about the facts of this case. See, e.g., ECF No. 98-1 at n.2 ("In August 2025, counsel for Mr. Clase participated in an interview with Bettor-1. At the conclusion of the interview, Bettor-1 executed a sworn declaration that completely denied any communications or discussions with Mr. Clase regarding gambling on baseball."). While defense attorneys for defendants Ortiz and Vasquez evidently have not met directly with Pena, the record is clear that they have reviewed, at a minimum, the declaration that resulted from Pena's meetings with Clase's defense team.[3] In these circumstances, Pena is far from a witness whom the defense would be calling to testify blind.

Second, the primary concern of defense counsel in Torres was that the "substance" of the testimony of the witness at issue "remain[ed] unknown." 845 2d. at 1170. Here, in contrast, if Pena were called to testify, the substance of his testimony is abundantly clear to all parties. As described above, Clase's attorneys have already met with him and learned his account firsthand; attorneys for the other defendants are privy to that same information. In addition, the government has produced voluminous Section 3500 material to the defense related to Pena over the course of many months leading up to this trial—62 discrete items as of this writing. The majority of these items were produced on August 21, 2026, roughly two-and-a-half months before jury selection. On this record, there is no credible claim that the substance of Pena's testimony, if he were called to testify, is unknown to the defense. And the ready availability of the voluminous records of statements Pena has previously made to both sides eliminates any concerns regarding purported asymmetry in present-day access to the witness.

Third, Torres cited multiple authorities for the proposition that a missing witness charge is not warranted "unless it is 'solely within the prosecution's power to call the witness to testify." Id. (quoting United States v. Montoya, 676 F.2d 428, 431 (10th Cir. 1982) and citing United States v. Anders, 602 F.2d 823, 825 (8th Cir. 1979)). Here, leading up to trial and including as recently as two days ago, November 17, 2026, counsel for Pena, Michael Weil, Esq., has repeatedly made clear to both the government and the defense that Pena is "prepared to testify for either side in the trial if called as a witness." See Exhibit A (e-mail of M. Weil, Esq.). In other words, it is not "solely within the prosecution's power to call the witness to testify" given that Pena has made crystal clear that he will testify for the defense if called. Further, the government has informed Mr. Weil that it has no objection to Pena meeting with the defense should the defense make that request of Pena prior to his testimony, and the Court is welcome to inquire of Mr. Weil if it has any reservations on this score. The government is unaware of any authority that imposes additional obligations on the government to make Pena available to the defense to testify such that on this record the Court could find that he is "solely within the prosecution's power to call the witness to testify." Id. To the contrary, "[i]f the Government determines that any cooperating witness objects to being interviewed by defense counsel before trial, it is not required to make that witness available and such an interview will not be ordered as witnesses have the right to decline

[3] For example, as the Court knows, counsel for Clase and Ortiz presented Pena's declaration to the government in an effort to persuade the government to decline to bring charges in this case.

to be interviewed." United States v. Streeter, No. 4:19-CR-211 RLW, 2022 WL 34660, at *3 (E.D. Mo. Jan. 4, 2022) (citing United States v. Bittner, 728 F.2d 1038, 1041-42 (8th Cir. 1984)).

Finally, the Court's analysis should be guided by the defendants' prior positions in this case with respect to Pena. Before trial, Clase moved for the "extraordinary remedy" of precluding Pena from testifying. ECF No. 239-1 at 21. Ortiz, too, made a request for the exclusion of Pena's testimony from this trial in no uncertain terms: "The Court should preclude the government from calling Bettor-1 [i.e., Pena] as a witness." ECF No. 237 at 3. These were deliberate motions made on the part of the defense, in contrast to other arguments made during this case on which the defense has waivered. Cf. Nov. 19, 2026 Trial Tr. at 2646:18-25 ("No. No. Ms. Geddes, we spoke about this before and there was no objection. I clarified and I asked at least twice are the defendants asking that the government not speak to the witness or show the witness documents until after the witness has been cross-examined. Everybody on the defense side of the courtroom said that would be fine. So I don't think there was any mistake."). In fact, after their initial filings seeking to preclude Pena from testifying, both Clase and Ortiz filed supplemental applications that again moved to preclude his testimony. See, e.g., ECF No. 247 (Clase), ECF No. 254 (Clase), ECF No. 255 (Ortiz).

In sum, the defendants repeatedly and vociferously moved the Court to affirmatively preclude Pena from testifying. The government's decision not to call Pena effectively grants the defendants the relief that they sought. Having made this record, the defendants cannot now claim that they are entitled to a missing witness charge that allows the jury to make an adverse inference against the government for declining to call the same witness they believe should never have been permitted to testify.

Here, again, Torres is instructive. As the Second Circuit observed, "courts have been reluctant to find a witness practically unavailable when it appears that the defense has no real interest in calling the witness to the stand, but merely is engaged in a form of gamesmanship in an effort to obtain a missing witness charge." Torres, 845 2d at 1170. Here, it is clear the defense has "no real interest in calling" Pena for the same underlying reason that they sought to preclude his testimony before trial: the inculpatory information he would provide about their clients would readily establish their guilt beyond a reasonable doubt. The Second Circuit in Torres made the same observation. Although the witness in Torres "refused to be interviewed by the defense," the Court noted that "the defense was also aware that the government intended to introduce a tape-recorded conversation between [the witness] and [the defendant] concerning the cocaine transaction if [the witness] was called to the stand." Id. Accordingly, "[t]he district court could easily have determined that the existence of the tape-recording and not [the witness's] refusal to be interviewed was the real factor discouraging the defense from calling [the witness] as a witness." Id.

The record is amply clear for this Court to make the same finding here. The reason why the defendants do not seek to call Pena as a witness is not because he has declined to be interviewed prior to trial, but rather because his abundant Section 3500 material is replete with inculpatory information against their clients. Coupled with the robust evidence of the defendants' guilt introduced so far at trial, including text messages, financial records, and the testimony of other corroborating witnesses, it is no surprise that the defendants would seek to avoid introducing

Pena's testimony that would further bolster the incriminating evidence introduced to date. This gamesmanship should not be rewarded with a missing witness instruction against the government.

The Second Circuit has made clear that, as here, "where a witness is equally available to both sides but neither party calls the witness, "the court has discretion to (1) give no instruction and leave the entire subject to summations, (2) instruct the jury that no unfavorable inference may be drawn against either side, or (3) instruct the jury that an adverse inference may be drawn against either or both sides." United States v. Caccia, 122 F.3d 136, 139 (2d Cir. 1997) (citations omitted). The government submits that the jury should be instructed that no unfavorable inference may be drawn against either side. The Second Circuit has explained that this "option, charging that no inference should be drawn against either party, is recommended," that "courts are in general agreement concerning the acceptability of . . . instructing the jury to draw no inferences against either party," and that this "instruction is preferred because it removes the issue from consideration of the jury, avoiding the possibility that the jury will draw inappropriate inferences from the absence of the witness." United States v. Johnson, 117 F.4th 28, 49–51 (2d Cir. 2024), cert. denied, 146 S. Ct. 1628 (2026) (quoting 1 Modern Federal Jury Instructions—Criminal ¶ 6.04 (2024)).

For all of these reasons, the Court should withdraw the proposed missing witness instruction from the charge to the jury.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Eric Silverberg
Sean M. Sherman
Rebecca M. Urquiola
James R. Simmons
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (KAM) (by ECF and Hand Delivery)
Counsel of Record (by ECF and E-Mail)